IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KEN SALAZAR, *et al.* ) <br> ) <br> Defendants. ) <br> ) <br> ) | Civ. Action No. 1:11-cv-01564-BAH |

**FRIENDS OF ANIMALS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE**

Plaintiff, Safari Club International ("Safari Club"), correctly points out that in 2009 Judge Kennedy held that Friends of Animals' ("FoA") interest in wild populations of African scimitar-horned oryx, dama gazelle, and addax were not fairly found to be impacted by the so-called "sport–hunting rule" because, in Judge Kennedy's opinion, there lacked a chain of causation between the sport-hunting of captive, domestic populations of these animals and poaching of wild antelope abroad.[1] *Friends of Animals v. Salazar*, 626 F. Supp. 2d. 102, 109-10 (D.D.C. 2009). Judge Kennedy's opinion, however, has no bearing on whether FoA has a right to intervene or standing in the present action. Because of the substantive difference between the rule being challenged in this action—the actual listing of these species as endangered—and the more limited sport-hunting "exemption"—found to be illegal in *Friends of Animals*, a decision in this case could cause a clear and direct impairment of FoA's interest in the wild populations of these species.

---

[1] Add footnote challenging Judge Kennedy's decision.

As an initial matter, the Safari Club does not deny that FoA has an interest in these animals in the wild.  See Safari Club International's Opposition to Friends of Animals Motion to Intervene (Dk. # 14) (hereinafter, "Opp. Br.") at 12 ("FoA has asserted an interest in the conservation of scimitar-horned oryx, dama gazelle, and addax in the wild . . ..").  Nor could the Safari Club argue that this interest is insufficient under Fed.R.Civ.P 24(a) for purposes of intervention, or under *Lujan* for purposes of standing. See Declaration of Priscilla Feral (hereinafter, "Feral Decl.") at ¶¶ 4-13.  The fact is that FoA has invested significant financial, research and educational resources into protecting these animals in the interest of their members.  Id. at ¶¶ 5-7.  FoA and its members have long-standing ties with on-the-ground conservation organizations in Africa related to these species.  *Id*.  The information gathered by these organizations of the three antelope species is used directly to benefit FoA member's interests in learning about the status, health and protection of these animals in these wild.  Id. at ¶¶ 15-16.  Moreover, Ms. Feral has regular, personal interaction with these organizations and will these species on her trips to Africa (indeed, she is there as of the writing of this Reply).  Id. at ¶¶ 10-13.

Instead, the Safari Club asserts that FoA's interest in wild antelope cannot be impaired because through this action it only challenges the U.S. Fish and Wildlife Service's (the "Service") "decision to include U.S. populations of the three antelope species in the endangered listing for each of these species as a whole." Opp. Br. at 2.  In other words, the Safari Club believes that this litigation will only impact U.S. captive herds of these species, and therefore, FoA must demonstrate a protectable interest in animals being held on their members' hunting ranches.  See, e.g., id. ("FoA lacks the requisite standing to participate as an intervenor as of right in the determination of the legality of the FWS's acts in listing and maintaining the listing of U.S. populations of the three antelope [sic]."); id. at 12 ("FoA cannot demonstrate any casual connection between any [] injury in enjoying the animals in the wild and the status of the U.S. populations.").

The Safari Club simply does not understand the nature of its own legal action. This case amounts to a plain facial challenge of the Service's decision to list these three species as endangered. While the Safari Club may only have a problem with the protection of some individual animals under the Endangered Species Act, **its legal challenge is to a listing rule that provides legal protection to all members of these three species of antelope, no matter if they reside domestically or abroad**.

Resolution of this case in favor of the Safari Club could, as a practical matter, impair FoA's interest in the wild population of these species. See Fund for Animals v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003) (stating that a party has the right to intervene under Fed.R.Civ.P 24(a) where it is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest."); see also, *B. Fernandez & Hnos v. Kellogg USA*, 440 F.3d 541, 545-46 (1st Cir. 2006) (holding that there is a right to intervene where "the intervenor's [] rights may be affected by a proposed remedy."). Here, Section 706 of the Administrative Procedure Act, which sets forth the appropriate standard of review in this action, provides a straightforward remedy available to the Safari Club: "the reviewing court **shall** . . . **hold unlawful and set aside agency action** found to be arbitrary, capricious, or otherwise not in accordance with the law . . . [or] without observance of procedure required by law . . .." 5 U.S.C. § 706. In this case, vacating the rule at issue in this case would result in setting aside all of the protections afforded by the listing rule, which include protections the rule intended for wild, African antelope.[2] In addition, FoA's interest in wild antelope could be impaired

---

[2] In limited cases, where equity might counsel against vacating a rule, a court can instead simply remand to the agency for further consideration. See *Fertilizer Institute v. EPA*, 935 F.2d 1303, 1312 (D.C. Cir. 1991). Of course, a remand of the listing rule could also result in future regulatory action that would impair FoA's interest in wild antelope, particular if the Service chooses to voluntarily vacate the rule pending rulemaking. More importantly, however, given the possibility that the rule could be set aside, FoA should not be required to pin its hopes on protecting its interest on whether or not the Court, if the Safari Club is ultimately successful, chooses remand over vacatur. To the contrary,

by any settlement reached between the Safari Club and the Service, such as a decision to stay the listing rule for further rulemaking proceedings.

Similarly, FoA has Article III standing to protect its interest in wild antelope that are currently protected by the Service's listing rule. As an initial matter, it is unclear to FoA why a proposed defendant-intervenor must demonstrate standing normally required of a plaintiff. See *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("Requiring standing of someone who seeks to intervene as a defendant . . . runs into the doctrine that the standing inquiry is directed at those who invoke the court's jurisdiction.") (citing *Virginia v. Hicks*, 539 U.S. 113 (2003)). Regardless, there are two reasons the Court should also find that FoA has the requisite standing to intervene. First, Article III standing is satisfied so long as one party already in the case on the same side has standing. *Roeder*, 333 F.3d at 233 (citing *Watt v. Energy Action Fund*, 454 U.S. 151, 160 (1981) and *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 338 (D.C. Cir. 2003). Here, the Service is a proper party to this action with, presumably, standing to be a defendant.

Second, and more importantly, there is a presumption that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." See *Roeder*, 333 F.3d at 233 (citing *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000). Here, FoA has a concrete and particularized interest in the wild antelope that are currently being protected by the service's listing rule that is under attack by the Safari Club in this action. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It is certainly not speculative—indeed given the remedy set forth in the Administrative Procedure Act, it is highly likely—that that interest would be impaired in the Safari Club prevailed in this action. See id.

---

FoA should be allowed to intervene in order to present not only defend the listing rule, but to present its equitable case for the Court to ultimately choose a narrow remedy in the event that becomes necessary.

Case 1:11-cv-01564-BAH   Document 20   Filed 01/02/12   Page 5 of 5

5

Dated this 2nd day of January, 2012.

                                      Respectfully submitted,

                                      /s/ Michael R. Harris

                                      Prof. Michael Ray Harris
                                      D.C. Bar. No. CO0049
                                      Environmental Law Clinic
                                      University of Denver
                                      Sturm College of Law
                                      2255 e. Evans Ave., suite 445
                                      Denver, CO 80208
                                      Phone: (303) 871-6140
                                      mharris@law.du.edu
                                      *Attorney for Friends of Animals*

\