UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL,<br><br>         Plaintiff,<br><br>         v.<br><br>KEN SALAZAR, in his official capacity as Secretary of the U.S. Department of the Interior, *et al.*,<br><br>         Defendants. | Civil Action No. 11-cv-01564 (BAH)<br>Judge Beryl A. Howell |
| OWEN, *et al.*,<br><br>         Plaintiffs,<br><br>         v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>         Defendants. | Civil Action No. 12-cv-00194 (BAH)<br>Judge Beryl A. Howell |
| EXOTIC WILDLIFE ASSOCIATION, *et al.*,<br><br>         Plaintiffs,<br><br>         v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>         Defendants. | Civil Action No. 12-cv-00340 (BAH)<br>Judge Beryl A. Howell<br>(Consolidated Cases) |

**MEMORANDUM OPINION**

Pending before this Court are three Motions to Intervene filed by four organizations: Friends of Animals ("FOA") has moved to intervene as a defendant in two cases, *Safari Club International*

1

*v. Salazar, et al.*, Case No. 11-cv-01564 ("*SCI* Action"), ECF No. 11, and *Exotic Wildlife Association, et al. v. U.S. Department of the Interior, et al.*, Case No. 12-cv-00340 ("*EWA* Action"), *see* Case No. 11-cv-01564, ECF No. 34; and three other organizations, Defenders of Wildlife ("DOW"), The Humane Society of the United States ("HSUS"), and Born Free USA (collectively, "DOW-proposed intervenors") have moved to intervene as defendants in the *SCI* Action, ECF No. 13.[1] The *SCI* and *EWA* Actions have been consolidated, along with *Owen, et al. v. United States Department of the Interior, et al.*, Case No. 12-cv-00194 ("*Owen* Action").[2] *See* Minute Orders (Feb. 21, 2012; March 16, 2012). For the reasons explained below, the motions for intervention as of right are granted in part as to FOA and DOW, and denied as to HSUS and Born Free USA. FOA and DOW shall be defendant-intervenors with respect to the consolidated case as a whole.[3]

## I. BACKGROUND

### A. Overview of the Consolidated Cases

A brief summary of the facts underlying these consolidated actions against the Federal Defendants is helpful to understanding the claims in each of the actions and the interests of the proposed defendant-intervenors. In 1991, the FWS published a proposed rule to list as endangered species under the Endangered Species Act ("ESA") three antelope species, namely, the scimitar-horned oryx, dama gazelle, and addax ("Three Antelope species"). *See* 56 Fed. Reg. 56,491 (Nov. 5, 1999). No action was taken on this proposed rule until September 2, 2005, when the FWS listed the Three Antelope species as endangered under the ESA, and also added a new regulation, codified

---

[1] While the two motions pending in the *SCI* Action are fully briefed, FOA's Motion to Intervene in the *EWA* Action was filed on March 16, 2012 and is not yet ripe. *See* Case No. 11-cv-01564, ECF No. 34. Nevertheless, the Court's resolution of the ripe motions effectively applies to the entire consolidated case.

[2] The *Owen* and *EWA* Actions were reassigned as related cases to the presiding judge on February 10 and March 14, 2012, respectively.

[3] Each of the three consolidated actions is against Ken Salazar, in his official capacity as Secretary of the Department of the Interior; the U.S. Fish and Wildlife Service ("FWS"); and Daniel Ashe, in his official capacity as Director of the FWS. The U.S. Department of the Interior is also a defendant in Case Nos. 12-cv-00194 and 12-cv-00340. (The Court refers to the defendants collectively as "Federal Defendants").

at 50 C.F.R. § 17.21(h), authorizing certain otherwise prohibited activities for U.S. captive-bred individuals of the Three Antelope species ("Captive-bred Exemption"). 70 Fed. Reg. 52, 319 and 52, 310 (Sept. 2, 2005).

FOA and the DOW-proposed intervenors subsequently and successfully filed suit alleging that the FWS unlawfully promulgated the Captive-bred Exemption. *See Friends of Animals v. Salazar*, 626 F. Supp. 2d 102 (D.D.C. 2009) (Kennedy, J.). Specifically, Judge Kennedy held that "the text, context, purpose and legislative history of section 10 [of ESA] requires case-by-case consideration before the FWS may permit otherwise prohibited acts to enhance the propagation or survival of endangered species," and that the "blanket exemption" reflected by the Captive-bred Exemption violated the ESA's subsection 10(c) requirement to provide public notice in the Federal Register of each application for a permit allowing such otherwise prohibited acts. *Id*. at 115. The court remanded the rule to the FWS for further proceedings. *Id*. at 115-116.

In 2010, both SCI and the *Owen* plaintiffs petitioned the FWS to delist from the endangered species list the U.S. captive-bred herds of the Three Antelope species, but the FWS has taken no action on those petitions. *See SCI* Action, ECF No. 1, *SCI* Compl. ¶ 10; *Owen* Action, ECF No. 1, *Owen* Compl. at 1.

On July 7, 2011, the FWS published a proposed rule to withdraw the Captive-bred Exemption, consistent with the holding in *Friends of Animals*. *See* 76 Fed. Reg. 39,804 ("Removal of the Regulation that Excludes U.S. Captive-Bred Scimitar-Horned Oryx, Addax, and Dama Gazelle From Certain Prohibitions") (July 7, 2011). This would eliminate the exclusion for the Three Antelope species from certain prohibitions in the ESA and require any person intending to engage in otherwise prohibited activity to qualify for an exemption or obtain a permit authorizing such activity.

The *SCI* Action was then filed in this district on August 31, 2011, alleging that the Federal Defendants violated the ESA and Administrative Procedure Act (APA) by including U.S. captive-bred herds of the Three Antelope species in the 2005 listing determination and for failing to respond in a timely manner to SCI's petition for delisting. *See SCI* Action, ECF No. 1, *SCI* Compl. ¶ 2. Likewise, the *Owen* Action, which was filed in the Northern District of Texas in October, 2011, alleges that the FWS violated the ESA and the APA by failing to respond to the EWA's petition for delisting. *See Owen* Action, ECF No. 1, *Owen* Compl. at 1. Following transfer of the *Owen* Action to this jurisdiction, this Court consolidated the *SCI* Action with the *Owen* Action. *See* Minute Order (Feb. 21, 2012).[4]

On January 5, 2012, FWS issued its final rule removing the Captive-bred Exemption, effective on April 4, 2012 ("Final Rule"). 77 Fed. Reg. 431 (Jan. 5, 2012). The *EWA* Action was filed on March 2, 2012, to invalidate and set aside the Final Rule as violative of the APA. *See EWA* Action, ECF No. 1, *EWA* Compl. at 4. On March 16, 2012, this Court consolidated the *SCI* and *Owen* Actions with the *EWA* Action. *See* Minute Order (Mar. 16, 2012). The plaintiffs in both the *SCI* Action and the *EWA* Action have pending motions for preliminary injunctions, through which they seek to enjoin enforcement of the Final Rule. *See SCI* Action, ECF No. 26; *EWA* Action, ECF No. 3.

### B. The Proposed Defendant-Intervenors

FOA and the DOW-proposed intervenors have moved to intervene as defendants in the *SCI* Action, and FOA has also moved to intervene in the more recently filed *EWA* action. *See SCI* Action, ECF Nos. 11, 13; *EWA* Action, *see* Case No. 11-cv-01564, ECF No. 34. These four organizations have submitted declarations indicating that they share three salient attributes relevant to their pending motions to intervene. First, each of these organizations was a plaintiff in the

---

[4] The *Owen* Action was transferred from the Northern District of Texas to this jurisdiction on February 6, 2012. *See* Case No. 12-cv-00194, ECF No. 16. Seven of the nineteen plaintiffs in the *Owen* Action are also plaintiffs in the *EWA* Action.

successful lawsuit against FWS in 2009, in which Judge Kennedy held that the Captive-bred Exemption, codified at 50 C.F.R. § 17.21(h), violated the ESA and the National Environmental Policy Act.[5] *Friends of Animals*, 626 F. Supp. 2d at 105. Second, these four organizations monitor applications for permits seeking authorization to engage in otherwise prohibited actions involving endangered species. *See* FOA Mot. to Intervene in *SCI* Action, Att. 1, ECF No. 11-1 (Declaration of Priscilla Feral, President of FOA, dated Nov. 1, 2011) ("Feral Decl.")[6], ¶ 22; *see also* DOW-Proposed Intervenors' Mot. to Intervene in *SCI* Action, Ex. 1, ECF No. 13-2 (Declaration of Nina Fascione, (former) Vice President of DOW, dated Nov. 10, 2008) ("Fascione Decl.") , ¶¶ 5, 7-14; *id*. at Ex. 2, ECF No. 13-3 (Declaration of Andrew Page, Senior Director at HSUS, dated Nov. 4, 2008) ("Page Decl."), ¶¶ 6-8, 13-18; *id*. at Ex. 3, ECF No. 13-4 (Declaration of Marcia Slackman, member of HSUS, dated Nov. 5, 2008) ("Slackman Decl."), ¶¶ 4-5, 8-9; *id*. at Ex. 4, ECF No. 13-5 (Declaration of Adam Roberts, Senior Vice President of Born Free USA, dated Nov. 11, 2008) ("Roberts Decl."), ¶¶ 7, 9, 11; DOW-Proposed Intervenors' Reply to SCI Opp. to Mot. to Intervene, Ex. 6, ECF No. 21-2 (Declaration of Michael P. Senatore, dated January 3, 2102) ("Senatore Decl."). This monitoring activity is facilitated by the requirement in ESA section 10(c) for the FWS to publish notice in the Federal Register of each application for a permit and obtain comment from interested parties and the public. *See* 16 U.S.C. § 1539(c). Certain permit applications, such as for sport hunting of such animals, prompt the organizations to inform their members and the public about proposed governmental actions that would impact endangered animals through various means, including electronic action alerts, their websites, and various

---

[5] As previously noted, the Final Rule, which is challenged in the *EWA* Action and by SCI and EWA in their motions for a preliminary injunction, would amend 50 C.F.R. § 17.21 by removing paragraph (h), the paragraph that excludes U.S. captive-bred scimitar-horned oryx, addax, and dama gazelle from certain ESA prohibitions. 77 Fed. Reg. 431, 438 (Jan. 5, 2012).

[6] Ms. Feral has filed two declarations in the consolidated case. The second declaration, filed on March 16, 2012, appears to be identical to the one filed in November, 2011 at ECF No. 11-1. *See* FOA Mot. to Intervene in *EWA* Action, ECF No. 34-1 (Declaration of Priscilla Feral, dated February 14, 2012). The Court will therefore cite only to the first filed Feral Declaration.

mailings. *See, e.g.*, Feral Decl. ¶¶ 16-17, 20-22; Fascione Decl. ¶¶ 7-13; Page Decl. ¶¶ 6-16; Slackman Decl. ¶¶ 6-8; Roberts Decl. ¶¶ 10-11. These organizations and their members also routinely comment on such actions to government agencies and legislative bodies. *Id*.

Finally, each of these organizations is committed to the conservation of endangered species. FOA is a "non-profit animal advocacy organization" with a mission to "cultivate a respectful view of nonhuman animals, free-living and domestic." Feral Decl. ¶ 3. Specifically, FOA seeks to intervene "because [SCI's] lawsuit directly threatens FoA' and its members' interests in protecting the three antelope species, and threatens to undo years of successful administrative and legal advocacy work." FOA Mem. in Supp. of Mot. to Intervene in *SCI* Action, at 1. DOW is "a national non-profit organization dedicated to the protection and restoration of all wild animals and plants in their natural communities," including the antelope species at issue. Fascione Decl. ¶ 2. With approximately 525,000 members nationwide, DOW advocates new approaches to wildlife conservation that protect endangered species and help keep other species from becoming endangered, and it employs education, litigation, research, legislation, and advocacy to defend wildlife and their habitat. *Id.* ¶¶ 4-8. The HSUS is a non-profit membership organization dedicated to protecting wild and domestic animals by actively opposing those projects, plans, and events that result in the killing or cruel treatment of animals. Page Decl. ¶ 2. With approximately 11 million members, this organization seeks to inform the public about the perils animals regularly face and to address those problems with diverse tools. *Id.* ¶¶ 6-7; Slackman Decl. ¶ 5. The HSUS invests considerable resources in its effort to end the trophy hunting of threatened and endangered species in general, and the inhumane practice of canned hunting of threatened and endangered species in particular. *See* Page Decl. ¶ 8. Finally, Born Free USA focuses on animal welfare and wildlife conservation, and engages in campaigns against animals in entertainment, exotic "pets," trapping and fur, and the destructive international wildlife trade. Roberts Decl. ¶¶ 2-9. Born Free USA

strives to end the suffering of wild animals in captivity, rescue individual animals in need, protect wildlife, including highly endangered species in their natural habitats, and encourage compassionate conservation globally. *Id.*

The proposed defendant-intervenors contend that they satisfy the standards for both intervention of right under Rule 24(a) and permissive intervention under Rule 24(b). The Federal Defendants take no position on the motions to intervene. SCI, on the other hand, opposes these motions. *See SCI* Action, ECF Nos. 14, 18.[7] For the reasons explained below, the motions for intervention are granted in part as to FOA and DOW, and denied as to HSUS and Born Free USA.

## II.   DISCUSSION

Rule 24 of the Federal Rules of Civil Procedure sets forth the requirements for both intervention as of right and permissive intervention. *See* FED. R. CIV. P. 24(a) & (b). While "[i]n theory" a court has "no discretion when intervention is under Rule 24(a)," Wright, Miller, & Kane, Federal Practice & Procedure, Civil 3d § 1913, practically speaking, even this basis for intervention involves "a measure of judicial discretion." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003) (citing *Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 779 (D.C. Cir. 1997) (noting "the existence of district court discretion over the timeliness and adequacy of representation issues under Rule 24(a)(2)")). If there is no right to intervene under Rule 24(a), "it is wholly discretionary with the court whether to allow intervention under Rule 24(b)." Wright, Miller, & Kane, Federal Practice & Procedure, Civil 3d § 1913. "If a movant does not meet the requirements to intervene as a matter of right, the Court may nonetheless allow intervention, pursuant to FED. R. CIV. P. 24(b), if the movant 'has a claim or defense that shares with the main action a common question of law or fact.'" *Id.* (quoting FED. R. CIV. P. 24 (b)(1)(B)).

---

[7] SCI does not oppose the participation of these organizations as amici. *SCI* Action, ECF No. 14, at 2 n.2; ECF No. 18, at 3 n.1.

In this case, the Court's analysis of the pending motions to intervene begins and ends with consideration of the Rule 24(a) prong for intervention of right.

**A. Legal Standard for Intervention of Right**

Rule 24(a)(2) states in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Court of Appeals for the D.C. Circuit has parsed the language of Rule 24(a)(2) to require four factors in order for a movant to qualify for intervention of right: "(1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties." *Fund for Animals, Inc. v. Norton*, 322 F.3d at 731 (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998)); *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008). Additionally, the proposed intervenor seeking to participate on equal footing with the original parties to the suit must demonstrate standing under Article III of the Constitution. *Fund for Animals, Inc. v. Norton*, 322 F.3d at 731-32; *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009); *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. 305, 308 (D.D.C. 2011) (hereinafter "*CBD v. EPA*"); *In re ESA Litig.*, 270 F.R.D. 1, 4 (D.D.C. 2010).

To establish standing under Article III, a prospective intervenor must show: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002). "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180-181 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

The injury-in-fact and causation connection with the challenged action requirements for standing are closely related to the second and third factors under Rule 24(a), which require a showing of interest in the subject matter of the lawsuit and the potential impairment of that interest absent intervention in the suit. *See, e.g.*, *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) ("[A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement."); *Defenders of Wildlife v. Jackson*, No. 10-1915, 2012 U.S. Dist. LEXIS 35750 at *10 (D.D.C. Mar. 18, 2012) (noting that outcome is the same whether standing is considered separately or as part of Rule 24(a)(2) interest requirements); *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) ("The standing inquiry is repetitive in the case of intervention as of right because an intervenor who satisfies Rule 24(a) will also have Article III standing.").

### B. Analysis

FOA and the DOW-proposed intervenors argue that they are entitled to intervene as a matter of right under Federal Rule of Procedure 24(a) because they meet the four-factor test as well as have standing. SCI argues that none of these organizations qualifies for intervention of right, even under a liberal application of the Rule, because they lack standing and do not satisfy the second factor under Rule 24(a): namely, they do not have an interest in U.S. captive bred herds of the Three Antelope species, which SCI states is the subject matter of this litigation. *See* SCI Mem. in Opp. to FOA Mot. to Intervene, ECF No. 14, at 1-2; SCI Mem. in Opp. to DOW-Proposed Intervenors Mot. to Intervene, ECF No. 18, at 2-3. "Because a prospective intervenor's Article III standing presents a question going to this Court's jurisdiction, the Court must address standing before considering the four-part test for evaluating intervention as of right." *In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1, 5 (D.D.C. 2011); *see also Fund for Animals*, 322 F.3d at 732; *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).

At the outset, the Court observes that the parties' briefs are peppered with references to the findings of two district courts regarding the standing of the proposed intervenors in connection with earlier litigation over the Three Antelope species. Specifically, in 2006, Judge Walker considered the standing of the DOW-proposed intervenors in a lawsuit they filed in California as plaintiffs against the FWS challenging the Captive-bred Exemption. *Cary v. Hall*, No. 05-4363, 2006 U.S. Dist. LEXIS 78573 (N.D. Cal. Sept. 30, 2006). This lawsuit was subsequently transferred and consolidated with *Friends of Animals*, in which Judge Kennedy considered the standing of FOA. *Friends of Animals v. Salazar*, 626 F. Supp. 2d at 105. Consequently, review of the thorough analyses conducted in both of these courts of the proposed intervenors' standing arguments during the 2009 litigation is helpful in considering the instant motions.

In that prior litigation, FOA proffered three grounds for standing to challenge the Captive-bred Exemption. First, FOA claimed that the exemption injured the organization's members' aesthetic interests in viewing antelope species in the wild because captive-bred herds created a legal market and increased the incentive for poaching the wild members of the species abroad. FOA suggests the same basis for standing in the instant suit, stating, "continued sport hunting in the U.S. undermines recovery efforts because it creates an international market for trophies . . . As long as some trophies can be obtained legally in the U.S. there will be a continued economic incentive to poach the antelope in Africa." FOA Mem. in Supp. of Mot. to Intervene in *SCI* Action, ECF No. 11 at 11.

While an injury-in-fact may occur "when a defendant adversely affects a plaintiff's enjoyment of flora or fauna, which the plaintiff wishes to enjoy again upon the cessation of the defendant's actions," the injured party must also show causation, namely, that "the injury is fairly traceable to the defendant's challenged conduct; and [] that the injury is likely to be redressed by a favorable decision." *ASPCA v. Feld Entm't, Inc.*, 659 F.3d 13, 18 (D.C. Cir. 2011) (citing *Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426, 332 U.S. App. D.C. 104 (D.C. Cir. 1998) (en banc)). This court in 2009 rejected the first proffered basis for standing due to FOA's lack of evidence that "eliminating the Rule (which regards captive-bred antelope only) will have an effect on the poaching of wild antelope and therefore has not shown causation." *Friends of Animals*, 626 F. Supp. 2d at 109. The court cited as "highly persuasive" the conclusion reached in the District Court for the Northern District of California, where Judge Walker in considering the standing as plaintiffs of the instant DOW-proposed intervenors, discounted the "theory" that "the Rule sent a signal that hunting antelope was acceptable and that this signal would cause hunters to kill wild antelope." *Id*.

Second, FOA claimed in 2009 that the exemption injured the organization's members' aesthetic interests in viewing the Three Antelope species in captivity, but this court in 2009 rejected this basis as unsupported. *Id*. at 110.

Finally, and most relevant to the instant case, FOA argued in 2009 that the organization had standing based on an informational injury since section 10(c) of the ESA created a right to information by requiring public notice and comment on a case-by-case basis of each permit application to engage in otherwise prohibited activity for endangered species. This permitting process was obviated by the Captive-bred Exemption and thereby resulted in a concrete injury "because plaintiffs regularly comment on section 10 permits." *Id*. at 112. This court agreed with FOA, concluding that "plaintiffs have suffered an informational injury which confers standing to challenge the [Captive-bred Exemption] Rule under subsection 10(c) of the Act." *Id*. at 113.

Similarly, the *Cary* court described the process required under Section 10(c), stating that: "Published notice and public availability of information generated in connection with § 10 permit applications make meaningful the participation of interested parties in the process of determining whether to allow an otherwise prohibited activity with respect to an endangered species." *Cary*, 2006 U.S. Dist. LEXIS 78573, at *31-32. The court concluded that Section 10(c) "protects the informational interests of those who participate in that process" and "creates a right to information sufficient to support standing." *Id*. at *34. Based upon the Complaint, in which "Defenders has alleged that it regularly comments on § 10 permits," the court concluded that the DOW's injury there was actual or imminent, and that this organization had "standing to pursue its claim under § 10(c)." *Id*. at *33.[8]

---

[8] The *Cary* court made no individual finding about standing for the instant proposed intervenors other than DOW, indicating that once one plaintiff had established standing, "[t]he court need not consider the standing of other plaintiffs to claim a violation of § 10(c)." *Cary*, 2006 U.S. Dist. LEXIS 78573, at *33 (citing *Public Citizen v. Dep't of Transp.*, 316 F.3d 1002, 1014-15 (9th Cir 2003) ("We need only find that one petitioner has standing to allow a case to proceed."), *rev'd on other grounds*, 541 U.S. 752 (2004)). While the standing of a single plaintiff may suffice to satisfy the jurisdictional requirement of a case or controversy, *see Arlington Heights v. Metropolitan Housing Development*

Notwithstanding the conclusions reached by two courts in 2006 and 2009 about the informational standing of both FOA and DOW regarding FWS regulations under the ESA for the Three Antelope species, SCI argues that these organizations do not have standing in the instant consolidated case for two reasons. First, SCI contends that the proposed intervenors have no interest in the "conservation status and value of the U.S. captive populations" and therefore have no interest in whether those herds are de-listed from the endangered species list. SCI Opp. Mem. to FOA Mot. to Intervene in *SCI* Action, ECF 14 at 8; SCI Opp. Mem. to DOW-Proposed Intervenors Mot. to Intervene in *SCI* Action, ECF No. 18 at 9 ("This litigation is about whether those animals should be classified as endangered in the first place. [DOW *et al*.] has no entitlement to information about a species simply because it is listed as endangered"). To the extent they claim an interest in the U.S. captive-bred herds of the Three Antelope species in order to stop the poaching of wild antelope abroad, SCI argues that the *Cary* court and *Friends of Animals* court previously rejected this causal connection and rejected standing on this ground. SCI Opp. Mem. to DOW-Proposed Intervenors Mot. to Intervene, ECF No. 18 at 8-9. Related to this argument, SCI further contends that "[t]he listing status of these U.S. populations [of antelope] does not, by itself, give [the proposed intervenors] a legally protected interest in access to information about members of these populations. By the same token, [the proposed intervenors] will suffer no harm to a legally protected interest if [SCI] succeeds in this litigation and the U.S. populations are removed from the endangered species list." *Id*. at 2.

FOA argues, however, that "[b]y de-listing captive-bred herds, those ranchers [with captive-bred herds] will no longer have to show contribution to the conservation of the species, nor will the

---

*Corp*., 429 U.S. 252, 264 & n. 9 (1977) ("Because of the presence of this plaintiff [with standing], we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit."); *Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 160 (1981) ("Because we find [that one of the three plaintiff groups] has standing, we do not consider the standing of the other plaintiffs."), the law is not clear whether each proposed intervenor must establish standing, although the parties appear to argue for standing for each organization. Rule 24(a) applies the requirements for intervention to "anyone" seeking to intervene and, thus, by its terms, requires each proposed intervenor to satisfy the four-factor test.

ranchers have incentive to do so.  Such a ruling will injure FoA' past work and future endeavors to protect the species and bring them back from near extinction in the wild." FOA Mem. in Supp. of Mot. to Intervene in *SCI* Action, ECF No. 11 at 13.  Similarly, the DOW-proposed intervenors assert that the plaintiffs' effort "to overturn the endangered listing status of captive members of these species" represents "a backdoor attempt to avoid the statutorily required permit scheme embodied in section 10 with respect to captive members of these antelope species, and to circumvent the ruling Proposed Defendant-Intervenors obtained from Judge Kennedy [in *Friends of Animals v. Salazar*, 626 F. Supp. 2d 102 (D.D.C. 2009)]." DOW-Proposed Intervenors' Mem. in Supp. of Mot. to Intervene in *SCI* Action, ECF No. 13-1 at 2.  They argue that this would undercut the proposed intervenors' "enforceable right to all of the required information flowing from [the statutorily mandated Section 10 permit application] process so that they can meaningfully participate in the Section 10 process." *Id*. at 16.

As an initial matter, the Court need not decide on a motion to intervene the merits of the argument whether de-listing the U.S. captive herds of the Three Antelope species would contribute to, or adversely affect, the conservation of this species.  The crux of SCI's position is that the proposed intervenors have "no entitlement to information about a species simply because it is listed as endangered," but only "when an individual decides to seek permission for an exemption from prohibitions limiting the take of members of these species." SCI Mem. in Opp. to DOW-Proposed Intervenors' Mot. to Intervene in *SCI* Action, ECF No. 18 at 9; *see also* SCI Mem. in Opp. to FOA Mot. to Intervene in *SCI* Action, ECF No. 14 at 15 ("FoA is not entitled to any type of information or comment opportunities simply because the three antelope species are listed as endangered. The only time FoA might be entitled to information or an opportunity to comment is if an individual seeks a permit for an exemption from ESA take prohibitions.").

SCI made this argument before it filed its preliminary injunction and before the *EWA* Action was consolidated with the *SCI* Action.  Now, however, at least part of the relief sought in these consolidated cases is to find invalid the Final Rule and set aside the case-by-case permitting process to which the proposed intervenors obtain information critical to their missions.  Indeed, that is the relief sought in the pending preliminary injunction motions filed by SCI and EWA, which seek to set aside the Final Rule and keep in place the *status quo* Captive-bred Exemption.  Both FOA and DOW have demonstrated their "concrete and particularized interest in the access to information under section 10(c) of the ESA and in the wild antelope that remain unprotected until the Service's Final Rule, which is under attack in this action, goes into effect."  FOA Mem. in Supp. of Mot. to Intervene in *EWA* Action, ECF No. 34 at 15; DOW-Proposed Intervenors' Mem. in Supp. of Mot. to Intervene in *SCI* Action, ECF No. 13-1, at 17 (setting aside Final Rule and "remov[ing] captive members of the three antelope species from the ESA's protection . . . would concretely injure Proposed Defendant-Intervenors' organizational interests in the critical information to which they are statutorily entitled under Section 10, as well as their interests in meaningfully participating in the Section 10 process").  This clearly implicates the same informational injury that two district courts previously concluded in 2006 and 2009 was sufficient to confer standing on FOA and DOW.  This Court finds the thorough analysis performed by those two judges persuasive here and reaches the same conclusion that FOA and DOW would suffer an informational injury if the plaintiffs' succeed in setting aside the Final Rule.

This conclusion finds support in the recent D.C. Circuit decision in *ASPCA v. Feld Entm't, Inc.,* 659 F.3d 13 (D.C. Cir. 2011).  The D.C. Circuit recognized that "a denial of access to information can work an 'injury in fact' for standing purposes, at least where a statute (on the claimants' reading) requires that the information 'be publicly disclosed' and there 'is no reason to doubt their claim that the information would help them.'"  *ASPCA v. Feld Entm't, Inc.,* 659 F.3d at

15

22 (quoting *Ethyl Corp. v. EPA*, 306 F.3d 1144, 1148 (D.C. Cir. 2002) (quoting *FEC v. Akins*, 524 U.S. 11, 21 (1998)).  In *Feld*, the DC Circuit found that the plaintiff did not have informational standing to sue a private defendant for its treatment of elephants on the attenuated theory that the defendant should have obtained a permit under ESA's Section 10 and, in the course of the permitting process, the defendant would have disclosed information which would then have been available to the plaintiff.  *ASPCA v. Feld Entm't, Inc.,* 659 F.3d at 22-23.  The court determined that the plaintiff sued under a different ESA section, which did not "directly entitle" the plaintiff to any information, and that the defendant, as a private person, in any case had no obligation to provide information to the plaintiff.  *Id*. at 24.  Section 10's disclosure requirements, the Court noted, are "triggered only in the context of an ongoing permit proceeding and intended, not to provide a broad right to information about the activities of any person engaged in a taking, but to allow interested parties to comment on and assist the Secretary's evaluation of permit applications.  *Id*. at 23-24 (citing 16 U.S.C. § 1539(c) (requiring the Secretary to "invite the submission from interested parties . . . of written data, views, or arguments with respect to the [permit] application")).  The Court acknowledged that Section 10(c) would entitle the plaintiff to information received by the FWS as part of a permit application, but absent such an application or even a requirement for such an application, the plaintiff could not establish informational standing.  Notably, the Court cited *Friends of Animals v. Salazar*, 626 F. Supp. 2d at 111 for its "finding informational standing where plaintiffs alleged that the Fish and Wildlife Service violated section 10(c) by promulgating a rule that eliminated permit requirements for takings of certain antelope."  *ASPCA v. Feld Entm't, Inc.,* 659 F.3d at 24.

As a second reason for denying the pending motions by the DOW-proposed intervenors, SCI argues vigorously that the DOW-proposed defendant-intervenors fail to demonstrate an injury-in-fact since they "rely solely" on three-year old declarations previously submitted in another

16

proceeding that contain "outdated" data and, in fact, incorrectly identify Ms. Fascione as being associated with DOW when she is now employed by a different organization. SCI Mem. in Opp. to DOW-Proposed Intervenors' Mot. to Intervene in *SCI* Action, ECF No. 18 at 11. SCI's point is well-placed. An injury-in-fact must be not only "concrete and particularized," but also "actual or imminent." The DOW-Proposed Intervenors counter that notwithstanding the 2008 dates of the declarations, the *Friends of Animals* decision as well as the declarations contain language indicating "routine" or "regular" activity of the organizations that "demonstrate their organizational interests in these issues are not 'outdated.'" DOW-Proposed Intervenors' Reply to SCI Opp. Mem., ECF No. 21 at 7. The Court is not persuaded. While DOW cured the defect in its untimely declaration by submitting a declaration that makes clear that the facts attested to three years ago remain in effect, *see* Senatore Decl. (attesting to continued truth of matters contained in declaration of Nina Fascione), neither HSUS or Born Free USA have done the same. The absence of any evidence in the record regarding the "imminence" of the injury to HSUS or Born Free USA is fatal to their ability to establish standing or their satisfaction of the second and third factor for intervention of right requiring a showing that they have a sufficiently current interest which would be impaired should plaintiffs prevail in this action.

The Court concludes that, consistent with the findings of two courts in prior litigation involving the same Three Antelope species, both FOA and DOW have informational standing in this matter. In addition, for the same reasons that these proposed intervenors have informational standing they also have an interest in obtaining information under section 10(c) that could potentially be impaired should plaintiffs prevail. Thus, both the second and third requirements of Rule 24(a) are satisfied by FOA and DOW.

With respect to the last two requirements of the four-factor test, SCI does not raise any dispute about whether the proposed intervenors have met the requirements of timeliness or

17

inadequate representation, and the Court concludes that those two requirements are satisfied. Both FOA and the DOW-proposed intervenors moved to intervene in the *SCI* Action approximately three months after the Complaint was filed, about one month after the FWS filed its answer, and before any dispositive motions were filed. Thus, their participation as defendant-intervenors will not lead to prejudice or delay the proceedings. *Cf. In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. at 8 (denying motion to intervene by SCI because, *inter alia*, settlement agreements were pending and SCI's stated purpose in seeking to intervene was to delay resolution of the case and prejudice FWS' ability to comply with the settlement terms).

Finally, while the interests of FOA and DOW as defendant-intervenors are clearly aligned with the Federal Defendants in this action, they have a legitimate basis for concern over the adequacy of the representation of their interests, in view of the prior lengthy litigation by these proposed intervenors against the FWS and the necessity of a court order to force the FWS to remove the Captive-bred Exemption. The Court is cognizant in reaching this conclusion that the burden of showing inadequate representation is "minimal," *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, (1972), and "not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986), particularly where the proposed intervenors' interests may be "more narrow and parochial" than that of Federal Defendants, whose perspective is necessarily on the broader public interest. *Fund for Animals, Inc. v. Norton*, 322 F.3d at 737.

The Court has determined that FOA and DOW may intervene of right under Rule 24(a)(2) and therefore will not consider their alternative basis for permissive intervention.[9]

---

[9] The Court declines to exercise its discretion to grant the alternative motion of HSUS and Born Free USA for permissive intervention under Rule 24(b)(1)(B). Whether standing is required for permissive intervention in this Circuit is an unresolved issue. *See In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1, 8 (D.D.C. 2011); *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31-32 (D.C. Cir. 2000); *In re ESA Litig.*, 270 F.R.D. at 6, n.5. As noted, these two organizations have not established standing. In any event, the three-year old declarations these organizations submitted in support of their motion raise serious question whether they *currently* have a strong interest at stake in this litigation and, to the extent they do, their interests will be adequately represented by FOA and DOW.

### III.     CONCLUSION

For the reasons explained above, the Court grants the motions to intervene of Friends of Animals and Defenders of Wildlife and denies the motions to intervene of The Humane Society of the United States and Born Free USA. Both Friends of Animals and Defenders of Wildlife shall be defendant-intervenors with respect to the consolidated case. As defendant-intervenors, they shall adhere to the schedules that apply to the FWS. An appropriate Order will accompany this Memorandum Opinion.

**DATED: March 23, 2012**                                         /s/ *Beryl A. Howell*
                                                                              BERYL A. HOWELL
                                                                              United States District Judge