# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE EXOTIC WILDLIFE ASSOCIATION, et al., ) ) ) Plaintiffs, ) ) v. ) ) UNITED STATES DEPARTMENT ) OF THE INTERIOR, et al., ) ) Defendants, ) ) and ) ) FRIENDS OF ANIMALS, ) ) Defendant-Intervenor. ) ) _____) | Civ. No. 1:12-cv-00340-BAH (consolidated with 11-cv-01564 and 12-cv-00194) |

## DEFENDANT-INTERVENOR'S [PROPOSED] MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

### Introduction

This is a case about whether an agency can repeal a regulation that violates a statute. The answer to that question must be "yes." Judge Kennedy of this Court already ruled that the regulation at issue in this case ("the Sport-Hunting Rule") violated the Endangered Species Act ("ESA"), and so the U.S. Fish and Wildlife Service ("the Service") acted properly in repealing that regulation. Indeed, the Service had no choice but to repeal the Sport-Hunting Rule.

Each of Exotic Wildlife Association's ("EWA") causes of actions fails to state a claim, and therefore should be dismissed. First, the Service provided a more than adequate rationale for this action—it was required by court order—and therefore the action was not arbitrary or

capricious. Any other assertions by EWA are simply irrelevant to whether the Sport-Hunting Rule should have been repealed.

Second, in responding to comments, an agency is not required to consider actions outside the scope of the rule as it was proposed in the Notice of Proposed Rulemaking. This is particularly true where, as in this situation, such changes can and will be considered in other administrative proceedings. Specifically, the Service might consider whether to remove the antelope species from the endangered species list,[1] although Friends of Animals ("FoA") would strongly oppose such action, but nothing in the Administrative Procedure Act ("APA") requires the Service to consider such action when repealing the Sport-Hunting Rule. Removal of the species from the endangered species list is also outside the limited scope of this rulemaking. Further, the Service is not required to modify its permitting system, which applies to every listed species, just because that system must be used if any ranches want authorization to allow hunting of endangered antelopes. This system represents the default if any species is listed as endangered, and nothing about complying with this Court's order requires the Service to change the system which already applies to similarly situated species.

Third, repealing a regulation that violates the ESA cannot itself violate the ESA. Rather, as this Court previously found, it is the continued existence of the Sport-Hunting Rule that would violate the ESA, not its repeal. EWA's argument to the contrary really amounts to nothing more than a complaint that the antelope species should not be listed as endangered, and that issue is properly addressed through a petition to the Service to remove the species from the list (and indeed such a petition is currently before the Service).

Finally, the National Environmental Policy Act ("NEPA") does not apply where the Service is simply repealing a rule as required by court order. NEPA does not apply in situations

---

[1] As discussed below, the Sport-Hunting Rule was promulgated at the same time that three species of antelope were listed as endangered under the ESA. The Sport-Hunting Rule allows any ranches in the United States to sell the right to hunt the antelope without obtaining a case-by-case authorization from the Service.

1

where an agency lacks any discretion whatsoever, and here the Service was required to repeal the illegal regulation. Thus, no NEPA claim exists in this case.

Because EWA has failed to state a claim for which relief may be granted, the entire case should be dismissed under Fed. R. Civ. P. 12(b)(6). FoA requests oral argument on this motion.

## Background

**I. Legal Background.**

**A. Endangered Species Act.**

The ESA is the "most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 153, 180 (1978). Through the ESA, Congress sought to "reverse the trend toward extinction, whatever the cost." *Id.* at 184. The ESA accomplishes this goal by providing protections necessary to both prevent extinction and recover imperiled species. 16 U.S.C. §§ 1531(b), 1532(3).

Under ESA Section 4, the Service must list all species that are either "threatened" or "endangered." *Id.* § 1533. An endangered species is one that is "in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A threatened species is "likely to become an endangered species within the foreseeable future." *Id.* § 1532(20). The Service must determine whether a species is threatened or endangered "solely on the basis of the best scientific and commercial data available." *Id.* § 1533(b)(1)(A). Once the Service lists a species as endangered or threatened, the ESA provides substantial protections.

Section 7 protects species from the actions of federal agencies. Under Section 7, every federal agency must "consult" with the Service to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical habitat]." 16 U.S.C. § 1536(a)(2). Section 7 consultation is required for any action that "may affect listed species." 50 C.F.R. § 402.14.

2

Section 9 prohibits any person from "taking" an endangered species. *Id.* § 1538(a)(1)(b). "Take" is defined broadly to include "harass, harm, pursue, hunt, shoot, would, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id.* § 1532(19). Section 9 also makes it illegal for any person to "import," "export," or "possess, sell, deliver, carry, transport or ship in interstate or foreign commerce . . . in the course of a commercial activity" any endangered species. *Id.* § 1538(a)(1). Section 9 protections apply equally to captive or wild endangered animals. 50 C.F.R. § 10.12; H.R. Rep. No. 93-412, at 10 (1973); *Cayman Turtle Farm, Ltd. v. Andrus,* 478 F. Supp. 125, 129-30 (D.D.C. 1979).

Section 10 provides the Service with flexibility to grant limited exceptions to Section 9's prohibitions, even for endangered species. For example, Congress recognized it would be necessary to take actions that would otherwise violate Section 9 in order to aid in the recovery of species. Accordingly, Section 10(a)(1)(A) allows the Service to permit "any act otherwise prohibited by [Section 9] for scientific purposes or to enhance the propagation or survival of the affected species." 16 U.S.C. § 1539(a)(1)(A). The Service uses Section 10(a)(1)(A) to authorize captive breeding and reintroduction programs. For example, the Service has a permit allowing it to handle endangered Mexican wolves as part of an effort to reintroduce the species in the southwestern U.S. 70 Fed. Reg. 71554 (Nov. 29, 2005). Similarly, the National Marine Fisheries Service, the Service's counterpart for marine species, issues permits for hatchery operations involving endangered salmon. 68 Fed. Reg. 1826 (Jan. 14, 2003).

Moreover, the plain language of subsection 10(c) demands that exemption permits be issued on a case-by-case basis and not as a blanket exception: "The Secretary shall publish notice in the Federal Register of *each* application for an exemption or permit which is made under this section." 16 U.S.C. § 1539(c) (emphasis added). "[T]he text, context, purpose and history of section 10 show a clear Congressional intent that permits must be considered on a case-by-case basis . . . ." *Friends of Animals v. Salazar*, 626 F. Supp. 2d 102, 120 (D.D.C. 2009), *appeal dismissed*, 09-5292, 2010 WL 286806 (D.C. Cir. Jan. 4, 2010).

3

### B. Administrative Procedure Act.

Courts review agency decisions under the ESA according to the Administrative Procedure Act ("APA"). *American Wildlands v. Norton*, 193 F.Supp.2d 244, 251 (D.D.C. 2002) (*citing City of Las Vegas v. Lujan*, 891 F.2d 927, 932 (D.C. Cir. 1989)). Under the APA, the reviewing court may set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (C).

The APA only requires the Court to decide whether the agency "articulated a rational connection between the facts found and the choice made." *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983).

### C. National Environmental Policy Act.

Congress enacted NEPA to ensure that agencies consider the environmental consequences of proposed major federal actions. 42 U.S.C. § 4321; 40 C.F.R. § 1500.1(c). NEPA is a procedural statute; it does not mandate particular substantive results. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989); *Strycker's Bay Neighborhood Council, Inc. v. Karlen*, 444 U.S. 223, 227-228 (1980). It requires an agency to prepare a detailed environmental impact statement ("EIS") only if a proposal is a "major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). NEPA is inapplicable to situations where "the agency does not have sufficient discretion to affect the outcome of its actions." *Citizens Against Rails-to-Trails v. Surface Transp. Bd.*, 267 F.3d 1144, 1151-53 (D.C. Cir. 2001).

## II.     Factual Background.

The Service has laid out the history of the three antelope species at issue in this case, Federal Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction at 8-9, (ECF No. 7) ("Gov't Opposition to Prelim. Inj."), and so FoA will not repeat that information here. FoA agrees that the antelope are imperiled and belong on the list of endangered species, subject to the full protections of the ESA. Those protections include that any ranch wishing to allow hunting

of endangered antelope must obtain a case-by-case permit from the Service, which is the result of the repeal challenged in this case.

The Service first proposed listing the antelope species over twenty years ago. 56 Fed. Reg. 56,491 (Nov. 5, 1991). The antelope were finally, following a lawsuit, listed as endangered over six years ago. Final Rule to List the Scimitar-Horned Oryx, Addax, and Dama Gazelle as Endangered, 70 Fed. Reg. 52,319 (Sept. 2, 2005). An Environmental Assessment was prepared at the time pursuant to NEPA. *Id.* at 52,310. Due to the listing of those species, the ESA should have required any ranchers to obtain case-by-case permits before authorizing hunting or any other prohibited actions in regards to the antelope. 16 U.S.C. § 1539; *Friends of Animals*, 626 F. Supp. 2d 102, 102 (D.D.C. 2009). However, at the same time the species were listed as endangered, the Service also issued the Sport-Hunting Rule that exempted captive-bred antelope, such as those on the ranches of EWA members. Exclusion of U.S. Captive-Bred Scimitar-Horned Oryx, Addax, and Dama Gazelle From Certain Prohibitions, 70 Fed. Reg. 52,310 (Sept. 2, 2005).

FoA filed a lawsuit in 2008 to compel the Service's compliance with the ESA and to withdraw the Sport-Hunting Rule. *Friends of Animals*, 626 F. Supp. 2d at 102. The court in *Friends of Animals* agreed with FoA that the sport-hunting rule violated the ESA because it permitted the continued killing of the antelope without the required case-by-case showing that each proposed take will enhance the survival of the species. *Id*. at 120. The plain language of subsection 10(c) of the ESA demands that permits be issued on a case-by-case basis and not as a blanket exception, therefore the court remanded to the Service for further proceedings consistent with its opinion. *Id.*

As the Service lays out in its Opposition to Plaintiff's Motion for Preliminary Injunction, the Service received in June 2010 two petitions, one from Safari Club International and one from EWA, to delist the U.S. captive-bred herds of the three antelope species. Gov't Opposition to Prelim. Inj. at 12. The Service has yet to complete a 90-day finding on either petition. *Id.* Safari

5

Club International sued the Service on August 31, 2011 in the United States District Court for the District of Columbia. No. 1:11-cv-01564-BAH (D.D.C. filed Aug. 31, 2011) ("*Safari Club*"). SCI's challenge currently consists of three claims alleging that the listing of the captive-bred antelope populations as endangered violates the procedural and substantive mandates of the ESA and the APA, and that the Service failed to complete the 90-day finding. Complaint, Dkt. # 1, *Safari Club*. FoA seeks to intervene as a defendant in *Safari Club*, but the court has yet to rule on its motion. This case was consolidated with the *Safari Club* case on March 16, 2012.

As a result of the court's decision in *Friends of Animals*, in July 2011, the Service proposed to rescind the Sport-Hunting Rule. 76 Fed. Reg. 39,804 (July 7, 2011). In direct response to a court order and after the appropriate notice and comment process, the Service published the final rule repealing the Sport-Hunting Rule. 77 Fed. Reg. 431 (Jan. 5, 2012). This led to the current action by Exotic Wildlife in this case.

EWA and its members have made clear that some number of these endangered antelopes are being hunted and killed[2] on ranches that have not obtained a permit. Compl. ¶¶ 17, 21, 22 ("[p]rior to FWS's publication of the permit rule, they had about 80 scimitar horned oryx on their ranch. The rule has already forced them to cut that number in half, and they do not know if they will be able to keep any after the rule comes into effect. . . ."; "[p]rior to FWS's proposed permit rule, he had about 23 oryx, but the rule has forced him to reduce his herd to 5. . . ."; "[p]rior to FWS's proposed permit rule, he had close to 100 addax and oryx on his ranch. After FWS announced the permit rule, he has had to cut his herds in half."). Indeed, only one of the plaintiffs has obtained a permit. Federal Defendants' Declaration of Timothy J. Van Norman at

---

[2] Although the complaint only states that "adoption of this rule causes Exotic Wildlife ranches to reduce or eliminate their herds of African antelope," EWA's Motion for Preliminary Injunction states that ranches have been selling more rights to hunt the three antelope species. CITE TO MEMO IN SUPPORT OF PI, TO SPECIFIC PAGES OR EXHIBITS. These statements from EWA indicate that antelope have continued to be hunted without ranchers obtaining case-by-case permission from the Service, in violation of Section 10 of the ESA. This highlights the importance of the repeal of the Sport-Hunting Rule and the dismissal of this case.

¶ 7, (ECF No. 7-1) (Plaintiff Eddy Blassingame, operator of The Diamond J Ranch, applied for a permit and the Service issued the permit on March 12, 2012).

## Standard of Review

A motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), is reviewed to ensure that "the pleadings … suggest a plausible scenario that sho[ws] that the pleader is entitled to relief." *Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011) (internal quotations and citations omitted). The court reviews such motions pursuant to the recent standard laid out by the Supreme Court: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## Discussion

This is a simple case regarding administrative law and procedure. The Service initially promulgated a regulation that this Court determined violates Section 10(c) of the ESA. Because the regulation violated the ESA, the Service had no choice but to repeal it. Thus the Service proposed to repeal the regulation, engaged in notice and comment, and ultimately repealed the regulation. Any claim that the Service somehow violated the APA must fail because complying with a court order cannot amount to action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Instead, the court order provided the agency with an adequate basis for the repeal in this case. FoA has searched for, but not found, any case where the repeal of a regulation required by court order was found to be arbitrary or capricious. EWA has also not cited to any precedent for its extraordinary claim.

Furthermore, this challenge by EWA to the repeal of a regulation in this case is only possible because Judge Kennedy decided to remand the regulation to the Service without vacating it immediately.³ As a result, the illegal exemption has been in effect from the date it

---

³ FoA believes that Judge Kennedy should have vacated the unlawful regulation back in 2009. Remand without vacatur is only appropriate in a limited subset of cases where the agency might be able to remedy the deficiency in its rule, such as by more adequately explaining the basis for

was ruled to violate the ESA (June 22, 2009) up until the date that the repeal will become effective (April 4, 2012). This nearly three-year delay is long enough. If this Court does not dismiss this case now, then endangered antelope species will continue to be denied the protections of the ESA. Judge Kennedy did not explain why he did not vacate the illegal rule immediately, but certainly the nearly three years that have elapsed since his ruling have provided ample time for the Service to repeal the rule and for the affected ranchers to prepare applications[4] for authorization to continue their actions which violate the ESA. FoA and other members of the public have the right to comment upon proposed "hunting" of endangered antelope species to enable a transparent public process that will ensure that ranches can backup assertions that their actions actually benefit the antelope. FoA therefore respectfully requests this Court to dismiss EWA's complaint and allow the repeal of the illegal blanket exemption to take effect on April 4, 2012.

### III.     The Repeal of a Rule Required by Court Order Cannot Be Arbitrary or Capricious.

EWA's first and second causes of action argue that the repeal amounts to arbitrary and capricious action that must be invalidated under the APA. These claims fail to state a cause of action because the Service was simply responding to a court decision that required it to repeal the Sport-Hunting Rule. Responding in the only way allowed by a court order cannot be said to be

---

the rule. *Checkosky v. S.E.C.,* 23 F.3d 452, 462-66 (D.C. Cir. 1994). In this case, as the Service now recognizes, the only option for the agency is to repeal the regulation. Furthermore, leaving the rule in place has actually led to irreparable harm, as EWA now admits that some of its members have authorized the hunting of endangered antelope without obtaining a permit. CITE TO BACKGROUND. Remand without vacatur is not appropriate when the failure to vacate the regulation would result in significant harm. *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 80 (D.D.C. 2010). Thus the sport-hunting rule should have been vacated initially by Judge Kennedy, as he made no finding of harm.

[4] Despite EWA's repeated assertions that allowing hunting of endangered antelope on ranches in the U.S. actually benefits the antelope species, apparently only one ranch has actually submitted an application for authorization to the Service. CITE TO BACKGROUND. Rather than subject these assertions to public comment and scrutiny by the Service, every other rancher and the EWA simply assert in this litigation, without support, that hunting on their ranches will somehow enhance the survival of the species.

arbitrary and capricious. EWA attempts to get around this by quibbling over irrelevant factual issues and by faulting the Service for not taking additional regulatory actions beyond repealing the unlawful regulation. Yet the only basis required for the repeal of the Sport-Hunting Rule is that it was required by court order. EWA nowhere challenges that basic fact. Whether the Service might have taken additional actions at the same time it repealed the Sport-Hunting Rule is not relevant for deciding whether the sport-hunting rule itself should be repealed. FoA therefore urges this Court to reject these claims and dismiss this action.

### A. The Service made no unsupported findings of fact that were relevant to the repeal.

The only finding of fact necessary to support the repeal in this case is that repeal would enable the public to comment on individual applications for exemptions from ESA prohibitions related to the endangered antelope. The Service made that finding of fact, 77 Fed. Reg. at 432, and EWA does not argue that it was inadequately supported. Instead EWA attempts to bootstrap numerous irrelevant and extraneous factual issues into this case by submitting the issues as comments to the proposed repeal. The Service responded to those comments when issuing its final rule, and now EWA argues that those responses somehow make the Service's action arbitrary and capricious. Because none of these issues are relevant to the legal question at issue (public participation under Section 10(c)), EWA cannot support a claim that the repeal is arbitrary or capricious.

When Judge Kennedy invalidated the regulation at 50 C.F.R. § 17.21(h), he considered only whether an exemption for ranches from the requirement to obtain a case-by-case permit for their operations regarding endangered antelope violated Section 10(c) of the ESA. *Friends of Animals*, 626 F. Supp. 2d at 111-13. Case-by-case determinations are required so that the public has an opportunity to consider the applications. *Id.* Judge Kennedy did not need to make any factual findings regarding the impacts of such an exemption because he found that the exemption

9

violated the ESA. Thus, any factual "findings" that EWA asserts were inadequately supported[5] are irrelevant to the challenged action of the Service – the repeal of the Sport-Hunting Rule found by this Court to violate the ESA. Thus, even if EWA was correct (which it is not) that the findings of fact were not adequately supported, such findings would not be necessary for the Service to repeal the Sport-Hunting Rule. Therefore, EWA's first cause of action must be dismissed for failure to state a claim.

Comparison of the "findings of fact" listed in EWA's first cause of action to the Service's explanation of its action in repealing the Sport-Hunting Rule further illustrates the irrelevance of EWA's "facts." Every quotation provided in the first cause of action is actually contained in the section on "Summary of Comments and Our Responses" provided by the Service, rather than in the sections on the background of the issue or the repeal of the regulation itself. What the Service actually found, in support of its action, was that repeal of the Sport-Hunting Rule was required to comply with Judge Kennedy's order to ensure the opportunity for public comment on activities that would otherwise be prohibited by the ESA, such as shooting endangered antelope species. *See* 77 Fed. Reg. at 432 ("By eliminating the regulation … and requiring individuals to submit an application … requesting authorization to carry out an otherwise prohibited activity, the Service can provide the public a 30-day period to comment on any proposed activity."). The requirement for public comment in Section 10(c) of the ESA was precisely the concern of Judge Kennedy when he ruled that the regulation violated the ESA. Thus, any other issues raised by the commenters, EWA included, are irrelevant and cannot make the Service's action arbitrary and capricious.

A closer examination of the "findings of fact" in EWA's first cause of action also reveals that they all involve irrelevant issues. The first quote from EWA was in response to comments that said the repeal would result in one of two outcomes: "either the species is allowed to go

---

[5] FoA notes that EWA has not challenged the Service's action as being "unsupported by substantial evidence" under

10

extinct or the U.S. Government provides subsidies for a mandated conservation plan." 77 Fed. Reg. at 433. The Service's disagreement with this comment is irrelevant to whether repealing the Sport-Hunting Rule would allow the public to comment on proposed hunting of endangered antelope. Intentional release of endangered antelope (the fourth quote in EWA's first cause of action) is similarly irrelevant to the public's right to comment on hunting of antelope. The second quote was about the economic incentives provided by the exemption or lack thereof, which again is not relevant to the issue of public review of case-by-case applications. Furthermore, the Service actually acknowledged that some people may believe, erroneously, that the removal of the exemption changes what activities may be authorized with respect to endangered antelope,[6] and that this might have economic impacts. 77 Fed. Reg. at 433. Additionally, although the Service did express disagreement with comments that private ranchers will reduce or eliminate their herds rather than seek a permit, it did acknowledge that possibility yet state that concerns over such reductions would not significantly impact the antelope as a whole. 77 Fed. Reg. at 433. Finally, the fifth quote[7] from EWA's first cause of action is not contained anywhere in the notice of the final rule.

    **B. The Service had no obligation to consider additional actions outside the scope of the proposed rule.**

The scope of the rulemaking at issue in this case is narrow – the Service proposed to eliminate (and ultimately decided to eliminate) the sport-hunting rule. 76 Fed. Reg. at 39,804. This rulemaking was in direct response to this Court's earlier decision finding that this rule

---

[6] To the extent that ranchers were previously engaging in activities for which they cannot obtain case-by-case authorization, the Service rightly points out that such activities were illegal even under the blanket exemption. 77 Fed. Reg. at 433. Thus any ranches that were violating the ESA previously cannot object simply because the repeal of the blanket exemption will shed light on those violations.

[7] EWA asserts that the Service "accepted and stated as true" a factual assertion that "[t]he rule will not result in negative impacts on the genetic diversity." Compl. ¶ 51. This language is not contained on the cited page of the Federal Register or anywhere else in the notice of the final rule. However, even where the Service does address comments regarding genetic diversity of endangered antelope herds, those responses are not relevant to the issue of whether the public has access to case-by-case applications for exemptions from the ESA.

violated the ESA. *Id.* at 39,805. The Service did not propose to modify the existing case-by-case permitting system, nor did the Service propose to remove the antelope from the list of endangered species. *Id.* EWA now faults the Service for not taking these additional actions, yet this challenge must fail because nothing in this Court's June 22, 2009 decision requires the Service to take those actions. If EWA or any other interested party wishes for the Service to take those actions, the proper procedure is to submit a rulemaking petition to the Service, not to challenge the repeal of an illegal regulation. Furthermore, even if the Service had been persuaded by the comments on its proposed repeal, it could neither have delisted the antelope species or modified its existing permitting system without providing notice of those proposed changes. Therefore, EWA's second cause of action must be dismissed for failure to state a claim for relief.

The scope of the rulemaking in this case was narrow, and it does not include any of the "alternatives" urged by EWA:

> To comply with the Court's order, the Service proposes to remove the regulation at 50 CFR 17.21(h) and eliminate the exemption for U.S. captive-bred scimitar-horned oryx, addax, and dama gazelle from certain prohibitions under the Act. Any person who wishes to conduct an otherwise prohibited activity with U.S. captivebred scimitar-horned oryx, addax, or dama gazelle would need to qualify for an exemption or obtain authorization for such activity under the current statutes or regulations.

76 Fed. Reg. at 39,805. Nothing in this proposal contemplates removing the antelope from the endangered species list, and to the contrary the proposal expressly anticipates that they would remain listed. Similarly, the proposal expressly contemplates that ranches would need to obtain an exemption under the current statutes and regulations, not a new or modified permitting scheme. Thus, none of the "alternatives" urged by EWA in this case fit within the scope of the rulemaking.

An agency is not required to respond to every comment or consider every alternative action urged by commenters. *American Mining Congress v. EPA*, 907 F.2d 1179, 1187-1188

12

(D.C. Cir. 1990).  Instead, an agency must only respond to comments which, if true, would require the agency to change its proposed rule.  *Id.*  In this case, the alternatives urged by EWA and other commenters would not require the Service to change the repeal, because the Service had no choice but to repeal the illegal regulation.  Rather, the comments would have required the Service to take an additional regulatory action outside the scope of its proposal, and thus no part of the proposal would have had to be changed.

Furthermore, the Service did actually consider the suggested changes to the permitting system.  The Service stated that it "appreciates the comments [regarding the current permitting process] and will consider them as [it] develop[s] ways to improve the efficiency and effectiveness of our permitting process." 77 Fed. Reg. at 436.  However, ultimately neither the Service nor the commenters could come up with any alternative other than the current regulations "that would provide the public an opportunity to comment on proposed activities being carried out with these [antelope] species." *Id.* at 432.

If the Service had chosen to implement any of the alternatives urged by the commenters on the proposed repeal in this case, it would have been required to provide notice of those changes to the proposed action and therefore could not have implemented them without significantly delaying the repeal of the illegal exemption at issue in this case.  The Service correctly noted that these comments were "outside the scope of this rulemaking" 77 Fed. Reg. at 434, 436.  Changes may only be made to the proposed rulemaking without triggering a new round of comments if the changes are a "logical outgrowth" of the proposal and previous comments.  *City of Stoughton v. EPA*, 858 F.2d 747, 751 (D.C. Cir. 1988).  For the changes to be a "logical outgrowth," the agency must have "alerted interested parties to the possibility of adopting a rule different than the one proposed." *Kooritzky v. Reich*, 17 F.3d 1509, 1513 (D.C. Cir. 1994).  In this case, the Service proposed only to remove the exemption for the antelope species, and did not mention delisting those species or modifying the general permitting scheme for issuing exemptions for any species listed as threatened or endangered.  76 Fed. Reg. 39,804

(July 7, 2011). Either of those additional actions would represent a dramatically different outcome than simply repealing the illegal exemption and applying the existing permitting scheme to the endangered antelope, and so neither represents a "logical outgrowth." Therefore, failure to consider those supposed "alternatives" does not make the repeal of the Sport-Hunting Rule arbitrary or capricious, and EWA's second cause of action must be dismissed.

### IV.     Repeal of a rule that violates the ESA cannot be said to itself violate the ESA.

EWA takes the remarkable position in this case that the action of repealing a rule found to violate the ESA itself violates the ESA. Compl. ¶ 59. The illogic of this position reveals again that EWA is not concerned with the repeal of the Sport-Hunting Rule itself so much as it is concerned by the listing of the antelope species as endangered in the first place. This case is not, however, the appropriate vehicle for courts to review the Service's action or inaction on any additional rulemaking activities, and therefore EWA's third cause of action must be dismissed. Additionally, EWA failed to provide the proper notice required before challenging the Service's action in this regard.

The argument that the repeal violates the ESA rests upon the assumption that listing of the antelope species as endangered will "jeopardize the continued existence" of those species. Compl. ¶ 59. Repeal of the Sport-Hunting Rule simply means that the antelope species are listed as endangered, and that if any ranches want to sell the right to "hunt" those species, they must first obtain a case-by-case exemption under Section 10 of the ESA, thus providing the public an opportunity to comment on the proposed activities. This represents the default system when a species is listed as endangered under the ESA. Therefore, any argument that repeal of the exemption will jeopardize the species really is an argument that listing the species as endangered will somehow harm the species more than it will help. While FoA strongly disagrees that listing the antelope species will counter-intuitively harm them, resolution of that issue is not relevant to the disposition of this case. Instead, that question is only properly raised on a challenge to the

original listing decision itself. And just such a case exists, in fact. *Safari Club International v. Salazar*, 1:11-cv-01564-BAH (D.D.C. filed Aug. 31, 2011).

Even if EWA were correct that repeal of the Sport-Hunting Rule jeopardized the antelope species' continued survival, the third cause of action must be dismissed for failure to provide notice to the Service under the ESA's citizen suit provision. As the Service properly points out, Section 7(a)(2) claims that agency action puts species in jeopardy are subject to the jurisdictional notice requirements of the citizen suit provision. Gov't Opposition to Prelim. Inj. at 24-25; *Bennett v. Spear*, 520 U.S. 154, 173-175 (1997). The Service's arguments that EWA is unlikely to succeed on the merits also indicates that EWA's case must be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

Because EWA's third cause of action was not properly noticed under the ESA, and because it amounts to nothing more than a challenge to the initial listing of the antelope species, it should be dismissed. The objections of EWA or any other groups to the listing of the species should be addressed in the case directly challenging that action by the Service.

## V.    No NEPA Analysis Was Required in This Case.

EWA's fourth cause of action must be rejected because the repeal of the Sport-Hunting Rule does not implicate NEPA for two reasons. First, NEPA does not apply to situations where an agency lacks any discretion whatsoever, such as this case. Second, in any event the agency already considered the environmental impacts at issue in this case, and EWA has presented no reason why that analysis should be supplemented at this time.

### A. NEPA is not implicated when an agency has no discretion

The same basic argument that requires dismissal of the first three causes of action also requires dismissal of the fourth—the Service had no choice but to repeal the Sport-Hunting Rule after it was found to violate the ESA. With regards to the NEPA claim, the D.C. Circuit has held that NEPA is inapplicable to situations where "the agency does not have sufficient discretion to affect the outcome of its actions." *Citizens Against Rails-to-Trails v. Surface Transp. Bd.*, 267

F.3d 1144, 1151-53 (D.C. Cir. 2001). Furthermore, many other circuits have held that an agency is not required to comply with NEPA when the agency has little to no discretion on the issue. *See Sac and Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1262-63 (10th Cir. 2001) (citing cases in the First, Fourth, Eighth, and Ninth Circuits). This supports the Service's conclusion in this case that NEPA analysis was not required because the repeal was "administrative and legal" in nature. 77 Fed. Reg. at 437. Because the agency had no choice but to repeal the illegal regulation, NEPA analysis was not required.

EWA cited no authority, in either the complaint or the Memorandum in Support of a Preliminary Injunction, that has required a NEPA analysis before an agency could complete a nondiscretionary action. Instead, EWA cites *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F.Supp.2d 1 (D.D.C. 2009), which is a case where Department of the Interior made a 180 degree change to a twenty-five year rule it had had in place regarding firearms in national parks without performing an environmental assessment or environmental impact statement. In another case cited by EWA, the court found fault with the failure of agencies to prepare a NEPA analysis before issuing oil and gas leases. *Sierra Club v. Peterson*, 717 F.3d 1409 (D.C. Cir. 1983). None of the cases cited by EWA involve an agency responding to a court order or other situations where an agency lacks discretion.

Here, the Service is not repealing the Sport-Hunting Rule of its own choice, but because it was ordered to do so by this Court. Therefore, no NEPA analysis is required and thus the fourth cause of action must be dismissed.

**B. The Service Already Considered the Environmental Impacts of Alternatives When the Antelope Species Were Listed as Endangered.**

The Service already considered the environmental impacts of listing the antelope species, 70 Fed. Reg. at 52,310, and no supplementation of that NEPA process is needed here, nor is a new EA required. As the Service correctly points out, any activity that was lawful under the exemption would also be eligible to receive a case-by-case permit or authorization. Even if the Service somehow has some discretion in this matter (which it does not), still there is no

justification for supplementing the existing EA or creating a new EA to analyze basically the same situation. When the Sport-Hunting Rule was first promulgated, the alternative was to not issue the exemption and require case-by-case permits under the existing permitting system. That is precisely the result of the repeal in this case. Thus, no different outcomes are legal under the repeal and so the existing NEPA documents do not need to be supplemented. Not only has EWA not even argued that the existing EA should be supplemented, it does not even acknowledge that the EA exists.

EWA's fourth cause of action should be dismissed because NEPA is not implicated where the Service was required by court order to take the challenged action, and regardless the Service already considered the impacts and alternatives when it prepared an EA before promulgating the illegal rule.

## Conclusion

U.S. ranches that contain endangered antelope species have already had nearly three years to prepare for the repeal of the illegal regulation at issue in this case. Any further delay cannot be tolerated. The Service's action of repealing an illegal regulation was not arbitrary or capricious, was not contrary to the ESA, and did not require the preparation of an EIS. Therefore, FoA respectfully requests this court to dismiss each of EWA's four causes of action for failure to state a claim.

Dated: March 16, 2012                    Respectfully Submitted,

/s/ Michael Ray Harris
Michael Ray Harris (DC Bar # CO0049)
Environmental Law Clinic
University of Denver-Law
2255 East Evans Avenue
Denver, CO 80208
303.871.7870
mharris@law.du.edu

Attorney for Defendant-Intervenor
Friends of Animals