# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL, )<br>   )<br>   Plaintiff, )<br>   )<br>v. )<br>   )<br>KEN SALAZAR, et al., )<br>   )<br>   Defendants. )<br>_____)<br>   )<br>TERRY OWEN, et al., )<br>   )<br>   Plaintiffs, )<br>   )<br>v. )<br>   )<br>U.S. DEPARTMENT OF THE INTERIOR, )<br>et al., )<br>   )<br>   Defendants. )<br>_____)<br>   )<br>EXOTIC WILDLIFE ASSOCIATION, et al., )<br>   )<br>   Plaintiffs, )<br>   )<br>v. )<br>   )<br>U.S. DEPARTMENT OF THE INTERIOR, )<br>et al., )<br>   )<br>   Defendants. )<br>_____) | 1:11-cv-01564-BAH<br><br>(consolidated with cases<br>1:12-cv-00194-BAH and<br>1:12-cv-00340-BAH)<br><br>Hon. Beryl A. Howell |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
SUPPLEMENT THE ADMINISTRATIVE RECORD**

Plaintiffs, the Exotic Wildlife Association, Charly Seale, Eddy Blassingame, Terry

Caffey, Ray Dockery, Joe Green, Nancy Green, Roy Leifester, Thomas Oates, and Ed Valicek

(collectively, the Exotic Wildlife Ranchers), ask this Court to grant their motion to require the U.S. Fish and Wildlife Service (FWS) to file with this Court the entire administrative record relating to the January 5, 2012 rulemaking that is challenged in this lawsuit. That rulemaking revises a rule that FWS itself stated was "critical" and "provides an incentive to continue captive breeding of these species . . . ."[1] In addition, the 2005 exemption rule was inextricably linked with the rule listing the three antelope species as endangered, and this Court therefore is entitled to review the administrative record for the listing decision in this challenge to the rule revising the companion or exemption rule.

FWS opposes this motion, too narrowly construing its requirements under the Administrative Procedure Act (APA), contending that it need only submit the portions of the whole administrative record that the decisionmaker actually considered.[2] But by giving this Court access to only that portion of the record that supports its decision, FWS artificially truncates the administrative record, and essentially asks this Court to ignore background, analysis, and conclusions highly relevant to the January 5, 2012 rulemaking. Indeed, in its January 5, 2012 rulemaking the FWS itself cited to the 2005 administrative record—that it now seeks to exclude from this Court's review. Likewise, the Exotic Wildlife Ranchers have cited to the 2005 administrative record in their motion for summary judgment and plan to cite to other portions of the 2005 administrative record in subsequent briefing.

Finally, all of these record documents have already been compiled and filed with this Court in connection with another of the consolidated cases, so supplementing the record in this

---

[1] Exclusion of U.S. Captive-Bred Scimitar-Horned Oryx, Addax, and Dama Gazelle From Certain Prohibitions, 70 Fed. Reg. 52,310, 52,313 (Sept. 2, 2005) (codified at 50 C.F.R. Part 17).
[2] Def.'s Opp'n to Pl.'s Mot. to Supplement the Administrative Record, Doc. 79, at 2.

case imposes no burden on FWS. There is thus no legitimate reason why this Court should not have the entire record before it in this legal challenge.

The Exotic Wildlife Ranchers further reply as follows:

1.      FWS contends that it did not directly consider the records for the listing and exemption rules when it issued the January 5, 2012 rule that the Exotic Wildlife Ranchers challenge in this case.[3] But it is well-established that an agency must include as part of the administrative record any material that the agency indirectly considered in rulemaking. Section 706 of the Administrative Procedure Act requires that the administrative record "be based on the full administrative record that was before the [agency] at the time [it] made [its] decision,"[4] and the "whole record" "include[s] 'all documents and materials that the agency 'directly or indirectly considered' . . . ."[5]

As another judge of this Court has held, the whole record includes all materials that might have influenced the agency's decision: "The 'whole record' 'include[s] all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision."[6] Likewise, the D.C. Circuit has stated, "[t]he policy requiring a reviewing court to consider the entire record before the agency prior to rendering its decision ensures that neither party is withholding evidence unfavorable to its position and that the agencies are not taking advantage of post hoc rationalizations for administrative decisions."[7]

---

[3] Def.'s Opp'n to Pl.'s Mot. to Supplement the Administrative Record, Doc. 79, at 2.
[4] *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).
[5] *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Engineers*, 448 F. Supp. 2d 1, 4–5 (D.D.C. 2006) (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993)).
[6] *Amfac Resorts v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001).
[7] *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

Here, FWS tacitly admits that it at least indirectly considered the administrative records for the 2005 listing and exemption rules when it issued the Final Rule revoking that decision, by acknowledging in the rulemaking that it was "revising" the earlier regulations relating to the three antelope species:

> We, the U.S. Fish and Wildlife Service (Service), are *revising the regulations* that implement the Endangered Species Act of 1973, as amended (Act), by removing the exclusion of U.S. captive-bred live wildlife and sport-hunted trophies of three endangered antelopes—scimitar-horned oryx, addax, and dama gazelle—from the prohibition of certain activities, such as take and export, under the Act.[8]

In fact, FWS extensively discusses and cites to the administrative record for the 2005 rulemaking—that it now seeks to exclude here—in its January 5, 2012 rulemaking:

> On September 2, 2005 (70 FR 52319), the Service determined that the scimitar-horned oryx (Oryx dammah), addax (Addax nasomaculatus), and dama gazelle (Gazella dama) were endangered throughout their ranges under the Act (16 U.S.C. 1531 et seq.). The numbers of these species of antelopes in the wild have declined drastically in the deserts of North Africa over the past 50 years. The causes of decline are habitat loss (desertification, permanent human settlement, and competition with domestic livestock), regional military activity, and uncontrolled killing. With the exception of reintroduced animals, no sightings of the scimitar-horned oryx have been reported since the late 1980s. Remnant populations of the addax may still exist in remote desert areas, but probably fewer than 600 occur in the wild. Only small numbers of dama gazelle are estimated to occur in the species' historical range, with recent estimates of fewer than 700 in the wild. Captive-breeding programs operated by zoos and private ranches have increased the number of these antelopes, while genetically managing their herds and providing founder stock necessary for reintroduction. The Sahelo-Saharan Interest Group (SSIG) of the United Nations Environment Program estimated that there are 4,000-5,000 scimitar-horned oryx, 1,500 addax, and 750 dama gazelle in captivity worldwide, many of which are held in the United States. Based on a 2010 census of its members, the Exotic Wildlife Association (EWA) estimates there are 11,032 scimitar-horned oryx, 5,112 addax, and 894 dama gazelle on EWA member ranches.

> On September 2, 2005 (the same date that we listed the three antelopes as endangered), the Service also published a new regulation (70 FR 52310) at 50

---

[8] Removal of the Regulation That Excludes U.S. Captive-Bred Scimitar-Horned Oryx, Addax, and Dama Gazelle From Certain Prohibitions, 77 Fed. Reg. 431, 431 (Jan. 5, 2012) (emphasis supplied).

CFR 17.21(h) to govern certain activities with U.S. captive-bred animals of these three species. For live antelopes, including embryos and gametes, and sport-hunted trophies of these three species, the regulation authorized certain otherwise prohibited activities where the purpose of the activity is associated with the management of the species in a manner that contributed to increasing or sustaining captive numbers or to potential reintroduction to range countries. These activities include take; export or re-import; delivery, receipt, carrying, transport or shipment in interstate or foreign commerce in the course of a commercial activity; and sale or offer for sale in interstate or foreign commerce.[9]

In *County of San Miguel v. Kempthorne*,[10] an APA challenge to FWS's reversal of position on whether to list the Gunnison sage grouse as endangered, this Court held that FWS's filing of only the record supporting its decision does not comply with the requirements of the APA: "The Court, therefore, finds that the plaintiffs have made a substantial showing that the Service has not filed the entire administrative record with the court, and excluded from the record evidence adverse to its position, which the Service directly or indirectly considered in coming to its decision."[11]

The *County of San Miguel* court therefore ordered FWS to supplement the administrative record with documents it relied on in its critical habitat deliberations for the Gunnison sage grouse because FWS's determinations regarding the listing and the critical habitat designation were "simultaneous, correlating decisions."[12] The court explained that because "a listing determination cannot exist without a critical habitat designation" and because they were not "decisions that can be made in a vacuum," the critical habitat documents were not "merely 'potentially relevant' to the designation decision as suggested by the defendants, . . . but they are directly relevant to the Service's obligations within the same provision of the ESA."[13]

---

[9] *Id.*
[10] 587 F. Supp. 2d 64 (D.D.C. 2008).
[11] *Id.* at 77 (citations omitted).
[12] *Id.* at 75.
[13] *Id.*

Here, too, the revised rulemaking of January 5, 2012 was not made in a vacuum, and FWS' records for the original listing and exemption rules are thus directly relevant. That the 2005 administrative record is relevant here in this lawsuit, and should be part of the administrative record before this Court, is underscored by the fact both parties have relied on the 2005 administrative record—FWS in the January 5, 2012 rulemaking and the Exotic Wildlife Ranchers in the briefing now in this Court in this litigation.

2. In addition, it bears repeating that one of the grounds for this legal challenge is that FWS failed to consider all the relevant factual alternatives and environmental information in this rulemaking.[14] To demonstrate this, Exotic Wildlife Ranchers must point to documents in the administrative record that FWS should have considered but did not. By refusing to include those documents in the record it has filed with this Court, FWS now seeks to compound its own shortcomings by asking this Court to likewise ignore relevant portions of the administrative record in deciding the legal issues before it. Other courts have held that a court cannot properly conduct judicial review of an agency action where the record is insufficient "to permit meaningful judicial review."[15]

In the January 5, 2012 rulemaking, FWS ignored the reasons why FWS believed in 2005 that it was crucial to survival of the species to promulgate the exemption rule in tandem with the rule listing the three antelope species as endangered, and therefore deemed the listing and the exemption to be two interlocking parts of a single regulatory regime to protect these antelope. And in the 2005 listing decision, FWS determined that the purpose of the exemption was to allow continued private ranching of these antelope, by individuals such as the Exotic Wildlife Ranchers. That FWS ignored this evidence in the 2012 rulemaking, or changed the rule with no

---

[14] Compl., Doc. 1, ¶¶ 2, 3, 5.
[15] *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009).

additional evidence in the record to support the new rule, explains why FWS so vigorously opposes inclusion of the 2005 administrative record from this lawsuit.  FWS does not want before this Court that FWS concluded in 2005 that exempting these antelope from the permitting requirements was essential to the continued survival of the species.  That FWS reversed or ignored an earlier conclusion without any support in the record for so doing is powerful evidence that FWS was arbitrary and capricious in its January 5, 2012 rulemaking.

       3.    FWS selectively quotes the Administrative Procedure Act to support its argument that "the Court is required to review only 'those parts of [the record] cited by a party' in determining whether an agency decision is arbitrary and capricious . . . ."[16]  That position cannot withstand scrutiny, for most courts, including this Court, have held "that a reviewing court has discretion to examine any part of the record it wishes."[17]  This principle

> was established before the passage of the APA and was incorporated in the APA. The last sentence of APA § 706 expressly authorizes such review: "the court shall review the whole record or those parts of it cited by a party."  The famous Universal Camera Corp. case firmly established this reading of the APA.[18]

More importantly, because the Exotic Wildlife Ranchers have cited to a portion of the 2005 administrative record and because the January 5, 2012 rulemaking discusses and cites the 2005 rulemakings, this Court is entitled under Section 706 to review the entire administrative record for that rulemaking in deciding the issues before it.

---

[16] Def.'s Opp'n to Pl.'s Mot. to Supplement the Administrative Record, Doc. 79, at 10−11 (citing 5 U.S.C. § 706).

[17] CHARLES ALAN WRIGHT & CHARLES H. KOCH, JR. 33 FED. PRAC. & PROC. JUDICIAL REVIEW § 8306 (1st ed. 2012); *see Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F. 2d 795 (D.C. Cir. 1983).

[18] *Id.* (citing 5 U.S.C. § 706; *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474 (1951)).

**Conclusion**

For all these reasons, the Exotic Wildlife Ranchers ask this Court to require FWS to file the entire administrative record supporting the January 5, 2012 rulemaking, including the administrative record of the underlying September 2, 2005 rulemaking.

Respectfully submitted,

 s/ Nancie Marzulla
Nancie G. Marzulla, D.C. Bar No. 400985
Roger J. Marzulla, D.C. Bar No. 394907
MARZULLA LAW, LLC
1150 Connecticut Avenue, NW
Suite 1050
Washington, DC  20036
(202) 822-6760 (telephone)
Nancie@marzulla.com
Roger@marzulla.com

Dated:  May 29, 2012                         Counsel for Plaintiffs