**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| SAFARI CLUB INTERNATIONAL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Ken Salazar, _et al._ ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | Case No. 11-cv-01564 (BAH) |
| ) | (consolidated with cases |
| Terry Owen, _et al._ ) | 1:12-cv-00194-BAH and |
| ) | 1:12-cv-00340-BAH) |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF THE INTERIOR, ) | |
| _et. al._ ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |
| ) | |
| EXOTIC WILDLIFE ASSOCIATION, _et. al._, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| U.S. DEPARTMENT OF THE INTERIOR, ) | |
| _et. al._ ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**FRIENDS OF ANIMALS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT AND NOTICE OF SUPPLEMENTAL AUTHORITY
(SAFARI CLUB INTN'L V. SALAZAR)**

In addition to lacking merit (for reasons already put forth by the Defendants and Intervenors in their various memoranda in support of summary judgment against the Plaintiff), **this case is not ripe for review**.  As the D.C. Circuit Court of Appeals held just today in *American Petroleum Institute v. Environmental Protection Agency,* No. 09-1038 (D.C. Cir. June 8, 2012):

> The ripeness doctrine generally deals with when a federal court can or should decide a case. Part of the doctrine is subsumed into the Article III requirement of standing, which requires a petitioner to allege *inter alia* an injury-in-fact that is 'imminent' or 'certainly impending.'  Even if a case is 'constitutionally ripe,' though, there may also be 'prudential reasons for refusing to exercise jurisdiction.'  In the context of agency decision making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference' in an ongoing decision-making process. Postponing review can also conserve judicial resources, and it 'comports with our theoretical role as the governmental branch of last resort.'

> For instance, declining jurisdiction over a dispute while there is still time for the challenging party to 'convince the agency to alter a tentative position' provides the agency 'an opportunity to correct its own mistakes and to apply its expertise,' potentially eliminating the need for (and costs of) judicial review.  Even if the challenger fails to persuade the agency, permitting the administrative process to reach its end can at least solidify or simplify the factual context and narrow the legal issues at play, allowing for more intelligent resolution of any remaining claims and avoiding inefficient and unnecessary 'piecemeal review.' Put simply, the doctrine of prudential ripeness ensures that Article III courts make decisions only when they have to, and then, only once.

*Id.* at 7-8 (citations ommitted).

As in *API,* given the Fish & Wildlife Service's ("FWS") legal obligation under Section 4 of the Endangered Species Act to respond to the Safari Club International's ("SCI") pending petition to readdress the status of U.S. captive African antelope (and the apparent agreement in

the works by the parties to do so by a date certain[1]), the issues raised by SCI's remaining claims, which directly seek to set aside the 2005 listing rule, are not fit for judicial decision.  *Id.* at 9-12.  In *API,* as here, the agency had agreed to reconsider an aspect of its rule being challenged in response to a petition for rulemaking.  *Id.*  The court found that the new administrative process would give the plaintiff an opportunity to persuade the agency to change its mind.  *Id.* at 9.  Moreover, even if the agency did not change its mind, allowing the additional administrative process to go forward would help "narrow the legal issues involved in this dispute and provide a more final and concrete setting for deciding any issues left on the table."  *Id.*

SCI's own arguments demonstrate the need in this case to allow the agency to act on the petition before this Court reviews the status of both U.S.-based and native African antelope.  As SCI admits, "FWS never conducted a scientific assessment of the conservation status of the U.S. non-native captive populations of the three antelope species, using the five listing factors indentified in Section 1533(a)(1) of the [Endangered Species Act ("ESA")]."  *Reply of Safari Club International in Support of Motion for Summary Judgment* (ECF No. 81) ("SCI Reply Memo") at 22.  But the agency is under a legal obligation to do so now.  The Court should allow FWS to do so unhindered by a judicial decision, and possible remand, that could affect its review.  Again, as the Court of Appeals said:

> Courts decline to review 'tentative' agency positions because doing so 'severely compromises the interests' the ripeness doctrine protects: 'The agency is denied full opportunity to apply its expertise and to correct errors or modify positions in the course of a proceeding, the integrity of the administrative process is threatened by piecemeal review of the substantive underpinnings of a rule, and judicial economy is disserved because judicial review might prove unnecessary if persons seeking such review are able to convince the agency to alter a tentative position.'

*API* at 8-9 (citation omitted).

---

[1] *See* Joint Status Report (ECF # 89).

SCI's main argument that FWS was obligated in 2005 to consider not listing U.S. captive antelope (or to treat them as a Distinct Population Segment ("DPS")) does not change the fact that this case is not ripe.  First, SCI is simply wrong in concluding that FWS was legally obligated to "act consistently" and treat captive populations differently that wild populations of endangered species.  SCI Reply Memo at 1-2.  In actuality, the ESA requires that the FWS "to make listing determinations **case-by-case in light of the best available science for each species**."  *In re Polar Bear Endangered Species Act Listing and §4(d) Rule Litigation*, 794 F.Supp.2d 65, 89 (D.D.C. 2011).  Here, FWS expressly requested scientific and legal information pertaining to whether it should consider a split-listing, a DPS, or some other different treatment for U.S. captive antelope.  However, "no comments were submitted that demonstrate[d] that the three antelope species [did] not qualify as endangered under the [ESA]."  70 Fed. Reg. 52310, 52320 (Sept. 2, 1995).  Accordingly, FWS used its discretion to list both the wild and U.S. captive populations of the three antelope species as endangered based on the best data available to it at the time.[2]  *See id* at 97 (citing *Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1141-42 (9th Cir. 2007)).

Finally, also like in *API*, granting the Defendants' Motions for Summary Judgment, or otherwise dismissing SCI's claims on prudential ripeness grounds, does not raise "[c]onsiderations of hardship" to SCI that would "'overcome the finality and fitness problems inherent in attempts to review tentative positions.'"  *API* at 12 (citation omitted).  Here, SCI and

---

[2] Moreover, SCI admits to confusion over whether or not FWS properly applied the DPS policy. SCI Reply Memo at 17.  As SCI puts it, "[b]ased on what little the Service offered as explanations in these two rules, it is not possible to tell whether the FWS applied its own DPS policy and if it did, whether it applied it correctly."  *Id*.  Friends of Animals disagrees with the basic premise of this argument:  it seems clear that FWS did consider using the DPS policy, but no party (including SCI) presented sufficient information to the FWS to show that it would be lawful.  Regardless, allowing FWS to further consider SCI's petition would certainly help clarify the record and make this case more fit for review.

its members clearly have another means of relief pending a decision by FWS on the petition: the Section 10 permitting process.  While hunting ranch operators might complain that the Section 10 permitting process is "unworkable," in real world practice, it turns out that many of them have chose to use the permit process and FWS has turnaround their applications quite quickly. Since January 2012, FWS has received and process dozens of Section 10 permit applications for the three antelope species. 77 Fed. Reg. 2314 (Jan. 17, 2012); 77 Fed. Reg. 3493 (Jan. 24, 2012); 77 Fed. Reg. 6139 (Feb. 7,2012); 77 Fed. Reg. 6816 (Feb. 9, 2012); 77 Fed. Reg. 9687 (Feb. 17, 2012); 77 Fed. Reg. 14035(Mar. 8, 2012); 77 Fed. Reg. 15383 (Mar. 15, 2012); 77 Fed. Reg. 17494 (Mar. 26, 2012); 77 Fed. Reg. 19311 (Mar. 30, 2012); 77 Fed. Reg. 20838 (Apr. 6, 2012); 77 Fed. Reg. 24510 (Apr.24, 2012); 77 Fed. Reg. 26779 (May 7, 2012); and 77 Fed. Reg. 30547 (May 23, 2012).  Even with the statutorily required 30-day public comment period, 16 U.S.C. § 1539(c), FWS has issued the permits in less than 90-days.

///

///

///

**CONCLUSION**

For the foregoing reasons, Friends of Animals requests this Court deny SCI's Motion for

Summary Judgment and dismiss this case as unripe.  In the alternative, the Court should grant the

Defendants' Motions for Summary Judgment and uphold the Final Listing Rule that classified

both the wild and U.S. captive populations of the three antelope species as endangered.

Dated this 8th day of June, 2012.

Respectfully Submitted,

/s/ Michael Ray Harris
Michael Ray Harris (DC Bar # CO0049)
Environmental Law Clinic

Ricketson Law Building
University of Denver Sturm College of Law
2255 E. Evans Avenue, Suite 335
Denver, CO 80208
Phone:  (303) 871-6140
Fax: (303) 871-6847
elc@law.du.edu

Attorney for Defendant-Intervenor
Friends of Animals

## CERTIFICATE OF SERVICE

I certify that on June 8, 2012, I electronically filed the foregoing **FRIENDS OF ANIMALS'**
**REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
with the Clerk of Court using the CM/ECF system, which will send notification of such filing to
the following attorneys of record:

Meredith Flax, meredith.flax@usdoj.gov
Counsel for the Fish and Wildlife Service

and

Anna M. Seidman, Director of Litigation for Safari Club International, (202) 543-8733,
aseidman@safariclub.org.


/s/ _ Michael Harris __