**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SAFARI CLUB INTERNATIONAL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| KEN SALAZAR, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |
| OWEN, *et al.*, | ) ) ) | |
| Plaintiff, | ) ) | Civ. No. 1:11-cv-1564 BAH |
| v. | ) ) | (consolidated with cases |
| U.S. Department of the Interior, *et al.*, | ) ) | 1:12-cv-00194 BAH and 1:12-cv-00340 BAH) |
| Defendants. | ) ) ) | |
| EXOTIC WILDLIFE ASSOCIATION, *et al.*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| U.S. Department of the Interior, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**INTERVENOR-DEFENDANTS DEFENDERS OF WILDLIFE,
HUMANE SOCIETY OF THE UNITED STATES, AND BORN FREE USA'S
REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Intervenor-Defendants Defenders of Wildlife, Humane Society of the United States, and

Born Free USA make the points set forth below in response to the opposition to their motion for

summary judgment by plaintiff Exotic Wildlife Association and private ranches ("EWA").

1. In attempting to persuade the Court that EWA knows better than the U.S. Fish and Wildlife Service ("FWS" or "Service") the scope of the agency's rulemaking proceeding at issue here and what, if any, options were available to the agency as a matter of law during that proceeding, EWA argues that the Service was "free to reinstate the original result on remand." Plaintiffs' Opposition and Reply ("Pls. Opp."), ECF 93, at 5 (citing Heartland Reg'l Med. Ctr. v. Leavitt, 415 F.3d 24, 29 (D.C. Cir. 2005)). That conclusion, however, is based on EWA's erroneous premise that Judge Kennedy only identified a mere procedural defect in the September 2, 2005 exemption rule – what EWA refers to as "lack of notice" – which could have been cured on remand, allowing the Service to "reinstate the original result on remand." Id. at 5.

To the contrary, Judge Kennedy found flagrant substantive violations of the Endangered Species Act ("ESA") resulting from serious procedural violations, namely: (i) withholding crucial information from the public and the Service; (ii) thereby making it impossible to evaluate whether each otherwise unlawful act engaged in by captive breeding facilities and recreational hunters of captive antelopes actually "enhance[s] the propagation or survival of the species" as required by Section 10 of the Act, 16 U.S.C. § 1539(a)(1)(A); (iii) also making it impossible for the Service to make the various "findings" required by the statute before any such activity may be authorized, see id. § 1539(d);[1] and (iv) precluding effective enforcement of the ESA with

---

[1] Section 10 of the ESA provides that the Service can only authorize otherwise prohibited activities with respect to endangered species when it "finds and publishes [that] finding in the Federal Register that (1) such exceptions were applied for in good faith, (2) if granted and exercised will not operate to the disadvantage of such endangered species, and (3) will be consistent with the purposes and policy set forth" at 16 U.S.C. § 1531 (i.e., conservation). 16 U.S.C. § 1539(d).


respect to these imperiled species via Section 11 of the Act, see id. § 1540.  See Intervenor-Defendants' Summary Judgment Brief ("Int.-Defs.' SJ Br."), ECF 82, at 9-11; see also Friends of Animals v Salazar, 626 F. Supp. 2d 102, 117-20 (D.D.C. 2009) (finding that "without this information it is impossible to evaluate whether each permitted act will enhance the propagation or survival of the species" and that "[b]lanket exemptions under regulations are anathema to this intention because they allow the FWS to permit a great number of exemptions at once without providing the detailed information to the public that would be required in an individualized analysis") (emphases added).

Therefore, since the FWS could not, as a matter of law, reinstate the blanket exemption on remand because such a scheme violates the ESA, see, e.g., United States v. Oakland Cannabis Buyer's Coop., 532 U.S. 483, 497-98 (2001) (courts may not allow ongoing violations of federal law to continue and must craft relief to remedy such violations), the Service's rulemaking proceeding here is easily distinguishable from the situation presented in Heartland Regional Medical Center v. Leavitt, and relied on by EWA, see Pls. Opp., ECF 93, at 5, where an agency simply failed to provide a rationale for its decision or failed to consider a relevant factor in its decisionmaking – i.e., procedural defects which may be curable on remand without altering the substance of the agency's ultimate decision.

2.      Equally unavailing is EWA's assertion that the Service predetermined the outcome of its rulemaking proceeding on remand by failing to consider alternative methods for complying with Judge Kennedy's ruling.  See Pls. Opp., ECF 93, at 5-8.  In support of this argument – and without any citation to case law – EWA turns the Administrative Procedure Act ("APA") on its head, positing that because several commenters expressed their views that the

Service should use Judge Kennedy's remand as a basis for overhauling the permit requirements of Section 10, the Service was obligated to consider those alternatives, lest the final rule be "predetermined" and therefore arbitrary.  Id. at 6-8.

However, as the Intervenors have explained and EWA has failed to refute, the D.C. Circuit has long held that an agency may circumscribe the scope of a rulemaking proceeding and does not reopen a matter simply because commenters wish it to do so.  See Int.-Defs.' SJ Br., ECF 82, at 22-23 (explaining that agencies do not reopen issues in a rulemaking without explicitly expressing intent to do so).  Thus, by issuing the July 7, 2011 proposed rule for the sole purpose of removing the unlawful exemption in compliance with Judge Kennedy's ruling, the Service was under no obligation to reconsider the bases for its original 2005 listing rule for these species; nor was it required to craft additional ways, via alternative permitting schemes not currently authorized by the ESA or its regulations, to address what EWA self-servingly refers to as "the devastating effects of retaining the listing rule" on captive breeding facilities.  Pls. Opp., ECF 93, at 9.  Rather, as the Intervenors have explained – without any response from the plaintiffs – if EWA wants the Service to consider novel permitting schemes to address EWA's concerns, it can petition the Service to suggest proposed rules that would revamp the Section 10 permitting requirements, which is a readily available mechanism under the APA for seeking such relief.  See Int.-Defs.' SJ Br., ECF 82, at 17; see also 5 U.S.C. § 553(e).

3.	EWA continues to press its assertion that "[i]f we could turn the clock back to September 2, 2005, FWS would not have listed these three species without also adopting the tandem rule exempting them from the ill-fitting permit scheme."  Pls. Opp., ECF 93, at 5-8.  This, however, is simply not how the ESA works, and therefore this assertion is patently

-4-

inaccurate.  As the Intervenors have explained, the Service must, as a matter of law, list any "species" as endangered, regardless of the economic or political effects of the decision, if the available scientific data demonstrate that the species is endangered in all, or a significant portion, of its range.  See Int.-Defs.' SJ Br., ECF 82, at 21-22; see also 16 U.S.C. § 1533 (standards for listing determinations).  Thus, because the scientific data clearly demonstrate that these species satisfied the criteria for "endangered" status at the time they were listed, nothing else – including accommodations to lessen the economic burdens on captive breeding facilities – could have affected the decision to list these species.  Accordingly, the listing decision here was not dependent on the blanket exemption found illegal by Judge Kennedy, and therefore EWA's severability argument must fail.[2]

    4.       Finally, EWA asserts that the Service violated NEPA by failing to prepare an Environmental Impact Statement ("EIS") or an Environmental Assessment ("EA"), and instead invoking a categorical exclusion, on the grounds that the agency lacked discretion to affect the ultimate outcome of the decision on remand.  Pls. Opp., ECF 93, at 3-4.  However, even if the agency had discretion on remand to consider alternative permitting schemes – which, as we have demonstrated, is not the case – there are several compelling reasons why NEPA would have been wholly inapplicable here, each of which constitutes an independent basis for disposing of EWA's

---

[2] Not only was the Service required to list the three antelope species in 2005 because the available scientific evidence clearly warranted that result, see 16 U.S.C. § 1533(b), but, as explained by Intervenors in the consolidated case brought by Safari Club International, the Service was required to list the entire species – including all wild and captive members of those species – because the captive population, spread across various breeding facilities, does not meet the statutory definition of "species," "subspecies," or "distinct population segment," and therefore is not a separately listable (or unlistable in this case) entity under the ESA.  E.g., Intervenor-Defendants' Reply, ECF 90, at 4-5.

NEPA claim (and none of which EWA responded to in its final brief). See Int.-Defs.' SJ Br., ECF 82, at 29-31 (explaining that there is no "major Federal action;" EWA has waived these arguments by failing to raise them in comments; listing rules are exempt from NEPA review; and the Service already prepared the precise NEPA review EWA is requesting in 2005 with respect to the exemption rule).

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Intervenor-Defendants' memorandum in support of their motion for summary judgment and in opposition to EWA's motion for summary judgment, judgment should be entered for the Intervenor-Defendants.

Respectfully Submitted,

　/s/
William S. Eubanks II (D.C. Bar No. 987036)
Katherine A. Meyer (D.C. Bar No. 244301)
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue NW, Suite 700
Washington, D.C. 20009
(202) 588-5206 / (202) 588-5049 (fax)
beubanks@meyerglitz.com
kmeyer@meyerglitz.com

Counsel for Defenders, HSUS, and Born Free USA

Date:   June 22, 2012

NEPA claim (and none of which EWA responded to in its final brief). See Int.-Defs.' SJ Br., ECF 82, at 29-31 (explaining that there is no "major Federal action;" EWA has waived these arguments by failing to raise them in comments; listing rules are exempt from NEPA review; and the Service already prepared the precise NEPA review EWA is requesting in 2005 with respect to the exemption rule).

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the Intervenor-Defendants' memorandum in support of their motion for summary judgment and in opposition to EWA's motion for summary judgment, judgment should be entered for the Intervenor-Defendants.

Respectfully Submitted,

　/s/
William S. Eubanks II (D.C. Bar No. 987036)
Katherine A. Meyer (D.C. Bar No. 244301)
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue NW, Suite 700
Washington, D.C. 20009
(202) 588-5206 / (202) 588-5049 (fax)
beubanks@meyerglitz.com
kmeyer@meyerglitz.com

Counsel for Defenders, HSUS, and Born Free USA

Date:   June 22, 2012