**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SAFARI CLUB INTERNATIONAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:11-cv-1564 BAH |
| | ) | |
| KEN SALAZAR, *et al.*, | ) | (consolidated with cases |
| | ) | 1:12-cv-00194-BAH and |
| Defendants. | ) | 1:12-cv-00340-BAH) |
| | ) | |
| TERRY OWEN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF THE INTERIOR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| EXOTIC WILDLIFE ASSOCIATION, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF THE INTERIOR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**SUPPLEMENTAL BRIEF OF INTERVENOR DEFENDANTS DEFENDERS OF WILDLIFE, HUMANE SOCIETY OF THE UNITED STATES, AND BORN FREE USA CONCERNING PLAINTIFFS' PRUDENTIAL STANDING**

Intervenor Defendants Defenders of Wildlife, The Humane Society of the United States, and Born Free USA ("Intervenors") provide this supplemental brief concerning Plaintiffs' prudential standing in response to the Court's March 22, 2013 Minute Order.

Plaintiff Safari Club International ("SCI") and Plaintiff Exotic Wildlife Association ("EWA") have both filed supplemental briefs asserting that they have prudential standing to pursue their respective lawsuits, and both hinge their standing on their members' purported conservation interests that are allegedly impaired by the U.S. Fish and Wildlife Service's ("Service") 2005 listing rule (in SCI's case) and the Service's January 5, 2012 removal rule (in EWA's case).  *See* Dkt. No. 110 (EWA Memo.); Dkt. No. 111 (SCI Memo).  Intervenors respond as follows.

### A.     SCI's Claims

With respect to SCI's claims, which challenge the Service's September 2, 2005 listing rule under section 4 of the ESA, it is Intervenors' view that SCI need not establish prudential standing because the Supreme Court's ruling in *Bennett v. Spear* forecloses the need to establish that a plaintiff is within the zone of interests in cases such as SCI's where the primary challenge is to the Service's nondiscretionary listing or other duties under section 4 of the Endangered Species Act ("ESA").  *See Bennett v. Spear*, 520 U.S. 154, 164-66 (1997) (finding that prudential standing doctrine does not apply to "actions against the Secretary asserting overenforcement under" section 4 of the ESA); *Fund for Animals v. Norton*, 322 F.3d 728, 734 n.6 (D.C. Cir. 2003) (explaining that *Bennett* "negates the zone-of-interests test [under the ESA] and expands standing to the full extent permitted under Article III") (citation and quotation

marks omitted). Therefore, Intervenors are of the view that SCI need not establish prudential standing here.[1]

B.     **EWA's Claims**

With respect to Plaintiff EWA's claims, which conspicuously do *not* challenge the Service's September 2, 2005 listing rule, Intervenors have already explained that EWA cannot establish *constitutional* standing to pursue its claims, *see* Dkt. No. 82 at 14 n.4, and thus the Court need not reach the issue of prudential standing for EWA because it is unassailable that Article III standing is jurisdictional. *See, e.g.*, *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (explaining that "[w]e have always insisted on strict compliance with this jurisdictional standing requirement" under Article III before deciding the merits). EWA challenges only the Service's January 5, 2012 rule that removed the agency's blanket exemption for these antelope species that Judge Kennedy found unlawful, 77 Fed. Reg. 431 (Jan. 5, 2012). *See Friends of Animals v. Salazar*, 626 F. Supp. 2d 102 (D.D.C. 2009). Thus, EWA's purported economic or other injury

---

[1] While Intervenors take the position that SCI need not demonstrate *prudential* standing, SCI nevertheless must establish *constitutional* standing to pursue its claims. While SCI may be able to establish injury based on the *economic* harm that Plaintiff's members might suffer as a result of the fact that they can no longer breed or sell endangered antelopes for recreational hunting without first obtaining a section 10 permit, *see Bennett*, 520 U.S. at 166 (holding that plaintiffs can sue "to prevent application of environmental restrictions" under the ESA that would cause them economic injury), SCI has not made this argument. Rather, it has asserted that listing the antelope species under the ESA (and regulating SCI's members' canned hunting activities) somehow harms the conservation of these species – an injury that is not supported by the record in this case. However, SCI's members' interests are strictly financial, as they desire to be allowed to continue to breed these endangered animals solely to sell lucrative trophy-hunting opportunities to persons who wish to kill them for recreational purposes. *See, e.g.*, Dkt. No. 70 at 20-23 (demonstrating, through administrative record documents, that SCI simply cannot demonstrate that it has any viable "conservation" interests at stake in this litigation for purposes of Article III standing, but, rather, its only legitimate interests for purposes of standing are its members' financial interests).

is *not* the result of the Service's action to remove an exemption that was illegal from the outset – i.e., the only agency action challenged by EWA's Complaint – but, rather, it stems from the Service's 2005 listing rule, under which all of these antelopes are listed, whether captive or wild, and pursuant to which EWA's members must obtain a section 10 permit to kill any of them. *See* 16 U.S.C. § 1539. Accordingly, EWA cannot demonstrate the necessary causation here for constitutional standing purposes – i.e., its purported harm is not "fairly traceable" to the removal of the unlawful exemption that EWA challenges, *see, e.g.*, *Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) – and therefore EWA cannot meet the applicable standards of Article III.

Nevertheless, should the Court reach prudential standing with respect to EWA, for many of the same reasons that EWA cannot succeed on the merits, EWA cannot establish prudential standing for any of its claims. *See* Dkt. No. 82 at 15-31. Unlike SCI's claims, which squarely fall under section 4 of the ESA and thus within the ambit of the ESA's citizen suit provision, EWA's claims challenging the removal rule are grounded in section 10 of the ESA (First and Second Causes of Action), section 7 of the ESA (Third Cause of Action), and the National Environmental Policy Act ("NEPA") (Fourth Cause of Action). *See* EWA Mar. 2, 2012 Complaint, ¶¶ 49-63. Under the Supreme Court's analysis of the ESA's citizen suit provision, these are APA, rather than ESA, claims. *See Bennett*, 520 U.S. at 172-74 (holding that claims raising "the Secretary's maladministration of the ESA . . . . are not subject to judicial review under" the ESA's citizen suit provision, but rather arise under the Administrative Procedure Act). Therefore, under *Bennett*, "[i]n determining whether the petitioners have standing under the zone-of-interests test to bring their APA claims, we look not to the terms of the ESA's

citizen-suit provision, but to the substantive provisions of the ESA, the alleged violations of which serve as the gravamen of the complaint." *Bennett*, 520 at 176. Accordingly, EWA's claims must be assessed for prudential standing in light of the pertinent provision invoked by each claim.

First, as to EWA's challenge to the Service's removal rule that merely rescinded the blanket exemption Judge Kennedy found to be illegal and *ordered the Service to repeal*, EWA's interest in *avoiding* the procedures mandated by section 10 obviously does not fall within the "zone of interests" that Congress sought to safeguard by mandating those procedures. *See* 16 U.S.C. § 1539 (allowing the Service to issue individual "take" permits in certain narrow circumstances and requiring public participation on all such permit applications). Indeed, EWA challenges the removal rule precisely because its members do not want to engage in the section 10 process that Judge Kennedy deemed necessary to comply with the plain terms of the Act, due to their alleged economic injury. Thus, it would be impossible for EWA to demonstrate any legitimate interest it seeks to protect which falls within the zone of interests of section 10, when it seeks to resurrect a regulation that Judge Kennedy found *violated section 10* by eliminating the need for case-by-case permits, and public participation on those permit applications, to "take" these antelopes. *See Friends of Animals v. Salazar*, 626 F. Supp. 2d at 115-20.[2]

---

[2] The only ESA case relied on by EWA is *Building Industry Association of Superior California v. Babbitt*, in which Judge Friedman found that "[s]ince plaintiffs are landowners who already have modified, or are in the process of modifying or are about to modify the fairy shrimp's habitat, they are directly regulated by the listing of the fairy shrimp and they therefore have prudential standing under the ESA." 979 F. Supp. 893, 901 (D.D.C. 1997). EWA's reliance on that case is disingenuous because it challenged a listing decision under section 4 of the ESA, and hence under *Bennett* the plaintiffs in that case did not have to establish prudential standing at all. *See Bennett,* 520 U.S. 154, 164-66; *see also Babbitt*, 979 F. Supp. at 901 (explaining that, because the court found that the plaintiffs could establish prudential standing, "the Court does

Indeed, Congress expressly created section 10 "*to limit substantially the number of exemptions that may be granted under the Act*," H. Rep. No. 412 (1973), 93d Cong., 1st Sess. 17, reprinted in "A Legislative History of the Endangered Species Act of 1973," 97th Cong., 2d Sess. (emphasis added). That is the opposite of what EWA seeks here through vacatur of the removal rule, which would likely result in a significant expansion of activities that "take" these endangered antelopes and would eliminate public participation by subverting the permitting process. Accordingly, EWA is not within the zone of interests protected by section 10 as to its claims challenging the removal rule, and, hence, this challenge fails on prudential standing grounds as well as on the merits.[3]

Second, as to EWA's section 7(a)(2) claim that the Service failed to ensure that its action in rescinding the blanket exemption was "not likely to jeopardize the continued existence" of the

---

not reach the question of whether plaintiffs' claims might have been brought under the citizen-suit provision, in which case the zone-of-interests test would not apply to them at all"). In any event, EWA has *not* challenged the Service's *listing* rule, which is why EWA cannot demonstrate Article III standing. *See supra* at 3-4. Thus, in contrast to the plaintiffs in *Babbitt* who were "directly regulated *by the listing* of the fairy shrimp" – a listing rule they challenged – EWA is not "regulated" in any way by the removal rule that EWA challenges here. Rather, EWA is regulated, if at all, by the September 2, 2005 listing rule which afforded the ESA's protections to these species, and because EWA has chosen not to challenge the listing rule, *Babbitt* is completely inapposite.

[3] Although EWA repeatedly asserts that its prudential standing is "self-evident," EWA has not provided declarations or other evidence demonstrating that its interests fall within the zone of interests protected by section 10. While Intervenors presume that, as with SCI, EWA's members seek to protect their *economic* interests in these antelopes, section 10 – unlike some other provisions of the Act – does not protect the economic interests of potential permittees who seek to proceed in violation of section 10's requirements because the express purpose is to *limit* the number of exemptions under the ESA. *Compare* 16 U.S.C. § 1539(a) (providing a "take" permit process for regulated entities and only mentioning economic hardship with respect to a very limited one-year hardship exemption certain applicants may obtain after a species is listed), *with* 16 U.S.C. § 1533(b)(2) (requiring the Service to designate critical habitat for listed species only "after taking into consideration the economic impact" of the designation).

antelope species, EWA similarly cannot establish prudential standing. The interest that Congress clearly intended to protect in section 7(a)(2) is the preservation of imperiled species, particularly to avoid extinction and promote recovery. *See* 16 U.S.C. § 1536(a)(2). Despite EWA's attempts to dress up its "conservation" interests in killing these endangered animals and selling canned hunts, EWA's interests are solely *economic*. *See* Dkt. No. 70 at 20-23 (demonstrating, through administrative record documents, why there are no viable "conservation" interests at stake in this litigation, but rather the only legitimate standing interests of Plaintiffs' members' are their lucrative financial interests in being allowed to continue to breed these animals for the high-priced trophies that they yield for those who wish to kill them for recreation). However, economic interests are simply not within the narrow zone of interests that Congress sought to protect in section 7(a)(2) of the ESA – i.e., the avoidance of extinction and promotion of recovery – and, accordingly, this claim must also fail on prudential standing grounds.

Third, as to EWA's NEPA claim, EWA has failed to establish a "substantial probability" that its interests fall within the zone of interests protected by NEPA, *see Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1286-89 (D.C. Cir. 2005), because its injuries can only stem from *economic* injuries suffered by EWA's members as a result of the removal rule. *See, e.g.*, Dkt. No. 45 at 6-8 (Plaintiff SCI acknowledging, based on the Service's findings in the listing rule, that Plaintiffs' captive breeding and killing of antelopes does not conserve the species because "reintroduction[] into the wild" is "presently infeasible," and that *it is pure "conjecture whether U.S. non-native captive herds would ever prove to be a source of animals for reintroduction of the animals in their native ecosystems*") (emphasis added); *id* (Plaintiff SCI stating that "[i]n fact, the evidence collected by the Service indicated that there

6

was no actual connection between the U.S. non-native captive and African native wild populations" in terms of conservation benefits to the species, and "the FWS found that no reintroductions into the wild from the U.S. non-native captive populations were currently taking place, and that, as a result, the U.S. populations had no current, direct role in restoring the species into the wild of their home range").

Under the D.C. Circuit's test for prudential standing under NEPA, commercial entities must "demonstrate by a 'substantial probability' that they have *any qualifying [interest]" in environmental protection that will be redressed if they prevail*, even if the impetus behind the NEPA claim is economic. *Nat'l Ass'n of Home Builders*, 417 F.3d at 1286-89 (emphasis added). In an essentially identical case where regulated parties challenged certain permits issued under the Clean Water Act as imposing restrictive economic burdens on the plaintiffs, the D.C. Circuit held that the plaintiffs could not establish prudential standing under NEPA where the plaintiffs alleged that the agency's "failure to issue more lenient [permits] prevents [the plaintiffs] from improving the environment," but were not able to point to any particular environmental protection benefits that would be vindicated if the agency undertook a NEPA process. *Id.* Accordingly, the D.C. Circuit dismissed the claim because "a NEPA claim may not be raised by a party with no . . . apparent environmental interest," and further because "NEPA cannot be used as a handy stick by a party with no interest in protecting against an environmental injury to attack a defendant." *Id.* at 1289 (quotation marks and citation omitted).

Applying the D.C. Circuit's prudential standing test here leads to the same result, as EWA has no genuine environmental interests. Even if a court-ordered NEPA process resulted in the agency's analysis of the conservation benefits of U.S. captive breeding of antelopes, as EWA

alleges, EWA has not provided any evidence that the lack of NEPA analysis regarding the standard application of ESA permit requirements has in any way undermined the conservation of these species. Indeed, the Administrative Record demonstrates, and even Plaintiff SCI concedes, that Plaintiffs' members are not engaged in any reintroduction programs or other conservation programs, *see supra*, and as a result EWA has failed to establish how its purported "conservation" injury could in any way be redressed by the Court. Accordingly, EWA's NEPA claim also fails for lack of prudential standing. *See, e.g.*, *Stratford, Conn. v. FAA*, 285 F.3d 84, 89 (D.C. Cir. 2002) (rejecting NEPA claim on prudential standing grounds because "petitioner has not connected its claimed economic injury to any environmental effects caused by the" agency's failure to comply with NEPA).

## CONCLUSION

SCI need not establish prudential standing because its claims arise under section 4 of the ESA, and thus are within the ESA's citizen suit provision. However, EWA must establish prudential standing for its claims which arise under NEPA and sections 7 and 10 of the ESA. Because EWA does not have Article III standing the Court need not reach the issue of prudential standing, but should the Court do so, EWA also lacks prudential standing because it cannot meet the applicable zone-of-interest test with respect to any of its claims.

                              Respectfully Submitted,

                              */s/ William S. Eubanks II*
                              _____
                              William S. Eubanks II (D.C. Bar No. 987036)
                              Katherine A. Meyer (D.C. Bar No. 244301)
                              Meyer Glitzenstein & Crystal
                              1601 Connecticut Avenue NW, Suite 700

        Washington, D.C. 20009
        (202) 588-5206 / (202) 588-5049 (fax)
        beubanks@meyerglitz.com
        kmeyer@meyerglitz.com

        Counsel for Defenders, HSUS, and Born Free USA