**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL<br><br>Plaintiff,<br><br>v.<br><br>Ken Salazar, *et al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Terry Owen, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et. al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| EXOTIC WILDLIFE ASSOCIATION, *et. al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et. al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 11-cv-01564 (BAH)
(consolidated with cases
1:12-cv-00194-BAH and
1:12-cv-00340-BAH)

**FRIENDS OF ANIMALS' RESPONSE TO PLANTIFFS EXOTIC WILDLIFE
ASSOCIATION'S SUPPLEMENTAL BRIEF RE: COURT ORDER
DATED MARCH 22, 2013 (PRUDENTIAL STANDING)**

Friends of Animals ("FoA") responds to Exotic Wildlife Association's ("EWA") Supplemental Brief in Support of Their Motion for Summary Judgment and Opposition to Defendant-Intervenor's Motion to Dismiss, Apr. 5, 2013, ECF No. 110 (hereinafter "EWA Supplemental Brief"), pursuant to this Court's order of March 22, 2013.  Minute Order, *Safari Club Int'l v. Salazar*, 11-cv-1564 (Mar. 22, 2013).  For reasons discussed below, *Grocery Mfrs.*, 693 F.3d 169 (D.C. Cir. 2012), highlights the fact that EWA[1] lacks prudential standing because EWA's interests do not fall within the zone of interests Congress intended to protect or regulate in enacting Section 10(a) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1559(a) (2011), and Section 102 of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332.

A. **Plaintiff EWA Lacks Article III Standing to Challenge the Repeal of the Hunting Exemption.**

As an initial matter, this Court has yet to rule on FoA's Cross-Motion for Summary Judgment, May 25, 2012, ECF No. 87-1 (hereinafter "FoA's MSJ").  In line with the United Sates Court of Appeals for the District of Columbia Circuit's ("D.C. Circuit") holding in *Grocery Mnfrs.*, this court should dismiss EWA's claims for a lack of Article III standing.[2] *See*

---

[1] FoA does not challenge whether Plaintiff Safari Club International ("SCI") has prudential standing.  This Court, however, should dismiss SCI's claims for a lack of ripeness, as articulated in FoA's Reply in Support of Its Motion for Summary Judgment and Notice of Supplemental Authority, June 8, 2012, ECF No. 92 (*Safari Club Int'l v. Salazar*).

[2] While FoA acknowledges that this Court has previously made a preliminary determination regarding EWA's Article III standing, this determination was made at a time when standing had not been contested and it appears that the Court relied solely on EWA's good faith allegations in the Complaint and its Motion for Preliminary Injunction to make this determination.  Good faith allegations are insufficient.  *See Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002).  Instead, a plaintiff must "'supplement the record to the extent necessary to explain and substantiate [his] entitlement to judicial review'." *Nat. Ass'n of Home Builders v. United States Army Corps of Engineers*, 417 F.3d 1272, 1286 (D.C. Cir. 2005).  The plaintiff must "prove their standing by a 'substantial probability.'" *Id*.  As a result, substantial likelihood of injury, as opposed to mere allegation, is required at the injunctive and summary judgment stages of a case.  *See Doe v. Rumsfeld*, 297 F. Supp. 2d 119, 130-31 (D.C.C. 2003).  This Court did not consider EWA's Article III standing using this heightened standard which would be more appropriate for either a preliminary injunction or summary judgment motion.

693 F.3d at 175-178.  First, EWA lacks standing because, like the Petroleum Group in *Grocery Mnfrs.*, "any injury they incur is a 'self-inflicted harm' not fairly traceable to the challenged government conduct."  693 F.3d at 177.  Second, as the Engine-Products Group in *Grocery Mnfrs.* put forth a "hypothetical chain of events" failing to demonstrate Article III standing, *Id*. at 175, so too does EWA put forth a theory vaguely suggesting EWA cares about the recovery of these species, and might some day help with the effort.  EWA's Complaint for Declaratory Relief ¶ 41 (hereinafter "Complaint"); *see also* FoA's MSJ 11.  Third, EWA suggests that the repeal of the rule issued in 70 Fed. Reg. 52,310 (hereinafter "Hunting Exemption") will result in their having to comply with the Fish and Wildlife Service's ("FWS") listing decision, 70 Fed. Reg. 52,319 (Sept. 5, 2005), and the prohibitions in Section 9 of the ESA.  *See* 16 U.S.C. § 1538.  This claim is directly analogous to the D.C. Circuit's holding that if the Petroleum Group's "injuries . . . are traceable to anything other than their own choice to incur them, it is to [Congress' Renewable Fuel Standard], not to the partial waivers" at issue.  *See Grocery Mfrs.*, 693 F.3d at 177.  Therefore, the *Grocery Mnfrs.* provides strong reinforcement for the contention that EWA's case should be dismissed on Article III standing grounds.  *See id*. at 178.

**B.     Prudential Standing Is Jurisdictional in the D.C. Circuit.**

There is no dispute that prudential standing is a jurisdictional issue in the D.C. Circuit.  *Id*. at 179-80; *see also Steffan v. Perry*, 41 F.3d 667, 697 (D.C. Cir. 1994) ("Prudential standing is of course, like Article III standing, a jurisdictional concept."); *Animal Legal Defense Fund, Inc. v. Espy*, 29 F.3d 720, 723 n. 2 (D.C. Cir. 1994) ("Standing, whether constitutional or prudential, is a jurisdictional issue which cannot be waived or conceded.").  Indeed, as the D.C. Circuit turned to address the Food Group's claims in *Grocery Mnfrs.*, the court made clear that it was free to address either Article III or prudential standing because "there is no mandated 'sequencing of jurisdictional issues.'"  693 F.3d at 179.  In his concurring opinion, Judge Tatel refused to depart from the "clear prior holdings that prudential standing is jurisdictional" and so

too must this Court in considering the case at issue. *Grocery Mnfrs.*, 693 F.3d at 180 (Tatel, J., concurring).

**C.     EWA Lacks Prudential Standing Because Its Interests Lie Outside of The Zone of Interests of ESA Section 10.**

1. <u>EWA Cannot Hold an Interest in an Illegal Interpretation of the ESA.</u>

To demonstrate prudential standing, EWA "'must show that the interest it seeks to protect is arguably within the zone of interests to be protected or regulated by the statute . . . in question' or by any provision 'inegral[ly] relat[ed][3] to it.'" *Grocery Mnfrs.*, 693 F.3d at 179 (citations omitted). When judicial review rests on the Administrative Procedure Act ("APA"), as EWA's does here, "the zone of interests test is to be determined not by reference to the overall purpose of the Act in question . . . but by reference to the particular provision of law upon which the plaintiff relies." *Bennett v. Spear*, 520 U.S. 154, 175-76 (1997)[4]; *see also* Complaint ¶¶ 50, 54, 58, 61. The specific provision of the Endangered Species Act ("ESA") on which EWA's alleged interest relies is 16 U.S.C. § 1539(a)(1)(A) because EWA effectively seeks to avoid Section 10's

---

[3] EWA may argue that 16 U.S.C. §§ 1539 ("Section 10") and 1536 ("Section 7") are integrally related. Indeed, the manner in which EWA's third cause of action is written causes some confusion. *See* Complaint ¶¶ 58-59. The government has taken the position that EWA's third cause of action is brought under the ESA. Federal Defendants' Response to Plaintiffs' Supplemental Briefs on Prudential Standing, ECF No. 113. FoA, on the other hand, reads EWA's third cause of action as an APA, not an ESA, claim generally attacking FWS' rescission of the Hunting Exemption under Section 10 as being generally inconsistent with the requirement of Section 7(a)(2). *Id.* This use of Section 7(a)(2) is insufficient to establish an integral relation with Section 10. There is no express claim made pursuant to Section 7 and even if EWA's third cause of action can be read to plead a claim under Section 7, EWA failed to give the required notice. Therefore, EWA cannot possess interests protected by Section 7(a)(2) and lacks prudential standing to bring its third cause of action.

[4] EWA argues *Bennett* may be construed to stand for the proposition that the zone of interest test is negated "for cases brought under the ESA." EWA Supplemental Brief 12. *Bennett's* holding is not so simple. Instead, the Supreme Court held that only suits brought under the citizen-suit provision of the ESA negate the zone of interests test. *See Bennett*, 520 U.S. at 173. Suits brought challenging the Secretary's implementation or enforcement of the ESA, on the other hand, are subject only to § 706 of the Administrative Procedure Act ("APA"). *See id.*; *see also Building Indus. Ass'n of Superior California v. Babbitt*, 979 F. Supp. 893, 900.

permitting requirements by challenging FWS' rescission of the Hunting Exemption. 77 Fed. Reg. 431; *see also* Complaint Prayer for Relief ¶ 1.

Recognizing that it might be necessary, in some cases, to take actions otherwise violating 16 U.S.C. § 1538 ("Section 9") of the ESA in order to aid in the recovery of endangered species, Congress granted FWS flexibility to grant individualized, limited exceptions to Section 9's take prohibition. *See Friends of Animals*, 626 F. Supp. 2d 102, 116-17 (D.C.C. 2009). Accordingly, Section 10(a)(1)(A) allows FWS to permit "any act otherwise prohibited by [Section 9] for scientific purposes or to enhance the propagation or survival of the affected species." 16 U.S.C. § 1539(a)(1)(A). Viewing this case through the lens of Section 10(a)(1)(A), there is no doubt that EWA would be able to assert an interest in obtaining a Section 10(a)(1)(A) permit and even challenge the denial of such a permit. *See Friends of Animals*, 626 F. Supp. 2d at 120. It is evident, however, that such a challenge is not the thrust of EWA's current suit. Instead, EWA claims an interest in an interpretation of Section 10 already held by this court to be illegal and contrary to Congressional intent. *Id.*; *see also* Complaint Prayer for Relief ¶ 1.

Questions regarding the scope of authority granted under the ESA "must be addressed in the usual course of the law, through case-by-case resolution and adjudication." *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Oregon*, 515 U.S. 687, 708 (1995). The Service's Hunting Exemption ran through exactly such a course of the law and was found illegal in violation of Section 10 of the ESA. *Friends of Animals v. Salazar*, 626 F. Supp. 2d at 120; *see also* 77 Fed. Reg. 431. Judge Kennedy's order remanding the Hunting Exemption to the Service, effectively forced the Service to issue a Rule rescinding the Hunting Exemption. *See id.*

Even so, EWA now asserts they possess an interest within the zone of ESA-regulated interests because they are regulated by the rescission of the Hunting Exemption. EWA Supplemental Brief 11. While it is true that EWA's members are regulated by "the current statutory and regulatory requirements," those requirements do not include any right to an illegal blanket exemption to Section 9. *Friends of Animals*, 626 F. Supp. 2d at 120; 77 Fed. Reg. 431.

5

Again, individual EWA members availing themselves to Section 10's lawful permitting process unquestionably have an interest in any FWS determination. But EWA, and its members, have no similar interest that can "be protected by the statutory provision whose violation forms the legal basis for [their] complaint[,]" given their claims fall outside the scope of Section 10's permitting provisions. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990). The current regulatory requirements embodied in Section 10(a) provide the only permissible regulatory exemptions contemplated by Congress and, as a result, EWA's claims can stand for nothing other than an effort "more likely to frustrate than to further statutory objectives." *See Hazardous Waste Treatment Council v. Thomas*, 885 F.2d 918, 992 (D.C. Cir. 1989). Therefore, EWA's interest in an illegal blanket exemption does not fall within the zone of interests regulated by Section 10 of the ESA.

    2. <u>If Anything, Plaintiffs Have an Interest in FWS' Decision to List, But EWA has Chosen Not To Pursue Such A Claim In This Litigation.</u>

EWA points to only two ESA cases to support an assertion that EWA is regulated by the recession of the Hunting Exemption because "[f]ailure to comply with [Section 10's express permitting scheme][5] could subject the Exotic Wildlife Ranchers to civil and even criminal penalties under Section 9 of the ESA." EWA Supplemental Brief at 9-11. But this type of regulation is primarily the result of FWS's 2005 decision by FWS to list the antelope species as endangered, 70 Fed. Reg. 52,319, not because of Judge Kennedy's order. *See Building Indus. Ass'n*, 979 F. Supp. at 901 (Plaintiffs "are directly regulated by the *listing* of the fairy shrimp and they therefore have prudential standing under the ESA.") (emphasis added); *Cape Hatteras Access Preservation Alliance v. United States Dept. of the Interior*, 731 F. Supp. 2d 15, 20-21 (D.D.C. 2010) (Citizens group had prudential standing to challenge the *designation* of a public

---

[5] EWA asserts Section 10 imposes a "new permitting scheme." EWA Supplemental Brief 11. Section 10's permitting scheme, however, is not "new," as it has existed in its current form since 1988. *See* H.R. 1467, 100th Cong. (1988). As determined by this court, Section 10's permitting regime constitutes Congress' express permitting scheme. *See Friends of Animals*, 626 F. Supp. 2d at 106-07, 120.

beach as critical habitat for an endangered bird . . . .) (emphasis added). Judge Kennedy's order never obligated the Service to delist the species, and the Service made no such proposal in its proposed rule to repeal the illegal Hunting Exemption. 76 Fed. Reg. 39,804 (July 7, 2011).

Further, EWA is not without legal remedy. Judge Kennedy's order leaves EWA free to pursue a permit pursuant to the procedures established by the Secretary's discretionary functions under Section 10 of the ESA. In addition, EWA may challenge, as SCI did, the 2005 listing decision pursuant to its case law. As it stands, however, EWA's interests fall outside of those protected under Section 10(a) of the ESA and EWA lacks prudential standing to bring this suit.

**D.     EWA Lacks Prudential Standing as it Relates to NEPA**

1. EWA's interests are economical in nature and fall outside NEPA's zone of interest

To be "aggrieved," a party must assert an interest that is arguably within the zone of interests intended to be protected by the statute on which it relies. *ANR Pipeline Co. v. F.E.R.C.*, 205 F.3d 403, 408 (D.C. Cir. 2000). The D.C. Circuit has held a party must demonstrate a "substantial probability" that such an interest falls within NEPA's zone of interest. *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1289 (D.C. Cir. 2005). NEPA itself is a statute aimed at the protection of the environment. *ANR Pipeline Co.*, 205 F.3d at 408. Thus, an alleged injury that seems more economic or monetary in nature may not necessarily "bring a party within the zone of environmental interests as contemplated by NEPA for purposes of standing." *Realty Income Trust v. Eckerd*, 564 F.2d 447, 452 (D.C. Cir. 1977).

Likewise, EWA's interest here in this case cannot be seen as conservation or environmental injury. The group has alleged that several of its members were "forced" to reduce the size of their respective herds as a direct result of the removal of the Hunting Exemption. Complaint ¶¶ 14-22. However, EWA has also stated that it seeks to "protect its members' ability to continue to own, raise, and *market* these three species without *unnecessary and burdensome legal restrictions*," indicating a certain economic incentive to raise the species at a lower cost. *Id.* ¶ 12 (emphasis added). In fact, EWA's own website details this economic incentive: "As

7

North America's oldest and most successful organization of non-native wildlife breeders and managers, the [EWA] is the leading advocate and defender of animal-owner rights and *for-profit species conservation*."[6] *Learn More About EWA,* Exotic Wildlife Association, http://myewa.org/learnmore.html (last visited Apr. 17, 2013) (emphasis added). Therefore, EWA's supposed "conservational interests" are in fact much more economically related and cannot be said with "substantial probability" to be within NEPA's zone of interests and do not support prudential standing.

      2.  <u>EWA's interests are procedural in nature and fall outside NEPA's zone of interest</u>

In *National Association of Home Builders*, an appellant seeking to challenge the Army Corps of Engineers' permit decisions under NEPA was found to not have prudential standing. 417 F.3d at 1289. The D.C. Circuit found the appellant was attempting to argue it was prevented from improving the environment because the Corps failed to issue more lenient nationwide permits for large-scale projects. *Id.* at 1288. The Court did not agree, saying the appellants could simply scale back projects that required nationwide permits and apply for individual permits at a local level. *Id.* The D.C. Circuit found the choice of permitting to be only a minor *procedural injury*, not environmental. *Id.* at 1288. "Accordingly, because a NEPA claim may not be raised by a party with no apparent environmental interest, we are constrained to hold that the appellants cannot advance theirs . . . [as] NEPA cannot be used as a handy stick by a party with no interest in protecting against an environmental injury to attack a defendant." *Id.* (citing *Town of Stratford, Conn. v. FAA,* 285 F.3d 84, 88 (D.C. Cir. 2002) (internal quotations omitted).

The same logic holds true here, where EWA members' goal to own, raise, and market these antelope without unnecessary and burdensome legal restrictions parallels the appellants' wish of a nationwide permit. Whatever real interest EWA's members might have in conserving

---

[6] As FoA previously stated in its FoA's MSJ 4, private ranches located in Texas breed the species of antelope at issue solely to sell "hunts" within high-fenced areas for up to $5,250 for each antelope, with guaranteed success and a mounted trophy. Declaration of Pricilla Feral in Support of FoA's Motion to Intervene ¶ 20, ECF No. 11.

these antelope in the wild can be protected, like in *National Association of Home Builders*, by seeking individual Section 10(a)(1) permits, not through the illegal Hunting Exemption. In fact, some named Plaintiffs have already done so and received permits rather quickly. FoA's MSJ 12.

3. Even if EWA could show a substantial probability of an environmental injury, it must do so within the context of ESA § 10

In *Grand Council of Crees (of Quebec) v. F.E.R.C.*, the appellants sought to challenge FERC's decision to forego an environmental impact survey ("EIS") when making ratemaking decisions. 198 F.3d 950, 959 (D.C. Cir. 2000). They argued prudential standing under the guise of injury to environmental interests. *Id.* at 958. However, the Court found the EIS requirement "does not impose any additional substantive requirements on FERC, but merely serves to ensure that FERC consider those environmental concerns that it is already authorized to consider, the zone-of-interests of the EIS requirement can be examined only in conjunction with the relevant substantive provision." *Id.* at 959. Because FERC properly did not consider environmental concerns under its ratemaking authority, the procedural requirements of an EIS did not further the appellants' environmental interests.[7] The court found the appellants' environmental interests were outside of the zone-of-interests of the EIS requirement and lacked prudential standing. *Id.*

EWA's claim in this case, as it relates to NEPA is:

> Whenever the FWS engages in a "major federal action" that will significantly impact the environment, the FWS must prepare an EIS under NEPA, addressing the impacts of the proposed project or rule as well as a range of alternatives. In promulgating this final rule, not only did the FWS fail to prepare an EIS, it did not even prepare an [environmental assessment], relying instead on a flawed justification that this action was "administrative and legal in nature."

Complaint ¶ 62. EWA argues that FWS violated NEPA by not performing an EIS to revoke the Hunting Exemption that was previously held to be illegal. *Friends of Animals*, 626 F. Supp. 2d at 102. In this case, the statute at issue in EWA's NEPA claim is Section 10 of the ESA, which

---

[7] Additionally, lacking an allegation of an "informational injury," the appellants were not "suitable challengers" of FERC's failure to perform an EIS. *Id.* (citing *FEC v. Akins*, 118 S.Ct. 1777, 1786 (1998); *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1075 (D.C. Cir. 1998)).

states in pertinent part "[t]he Secretary *may* permit, under such terms and conditions as he *shall* prescribe . . . ." 16 U.S.C. § 1539(a)(1)(A) (emphasis added). Section 10 requires the Secretary to make a determination that the granting of a permit will "enhance the propagation or survival of the affected species." *Id.* In some circumstances, FWS may need to comply with NEPA in issuing such a permit. But where, as here, FWS issued a permit that was illegal under Section 10, it would be an affront to the statutory scheme of both ESA and NEPA to require an EIS in order to correct non-compliance by the agency with Section 10. There is no reason to believe that Congress authorized such a review and certainly neither statutory purpose of the ESA or NEPA would be furthered. It would prolong the life of an illegal Section 10 permit and because FWS must correct that, obligatorily, there is little it could to further NEPA's informatory role.[8] *See Grand Council of Crees (of Quebec)*, 198 F.3d at 959.

    4.  <u>EAW's interest also fall outside NEPA's zone of interests because NEPA was never required nor necessary</u>

FoA has previously argued EWA lacks standing as it pertains to its NEPA claim because a NEPA analysis was not required in this case, *see* FoA's Defendant-Intervenor's [Proposed] Motion to Dismiss and Memorandum in Support 15-17, ECF No. 47, and it is not necessary to delve into full detail of that same argument. Moreover, the D.C. Circuit has held NEPA is inapplicable to situations where "the agency does not have sufficient discretion to affect the outcome of its actions." *Citizens Against Rails-to-Trails v. Surface Transp. Bd.*, 267 F.3d 1144, 1151-53 (D.C. Cir. 2001). Many other circuits have held that an agency is not required to comply with NEPA when the agency has little to no discretion on the issue. *See Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1262-63 (10th Cir. 2001) (citing cases in the First,

---

[8] There are two Congressional purposes behind NEPA's EIS requirement under 42 U.S.C. § 4332(2)(C)—collection of information concerning significant environmental impacts by the agency, and act in a public "informational role" to show the agency has considered environmental impacts and allow for public comment. *See Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 349 (1989); *Baltimore Gas & Electric Co. v. NRDC,* 462 U.S. 87, 97 (1983).

Fourth, Eighth, and Ninth Circuits). This supports FWS's conclusion in this case that NEPA analysis was not required because the repeal was "administrative and legal" in nature. 77 Fed. Reg. at 437. Because FWS had no choice but to repeal the illegal regulation, NEPA analysis was not required. FoA's Defendant-Intervenor's [Proposed] Motion to Dismiss and Memorandum in Support 15-17, ECF No. 47. EWA has cited no authority, in either its Complaint or its Memorandum in Support of a Motion for Preliminary Injunction, ECF No. 3-1, that has required a NEPA analysis before an agency could complete a nondiscretionary action. Therefore, no NEPA analysis is required and EWA lacks standing, both constitutional and prudential, in regards to NEPA.

## CONCLUSION

For the foregoing reasons, FoA requests this Court grant FoA's motion to dismiss, grant summary judgment for a lack of Article III standing and prudential standing, and to deny EWA's motion for summary judgment.

Dated this 19th day of April, 2013.

        Respectfully Submitted,

        /s/ Michael Ray Harris
        Michael Ray Harris (DC Bar # CO0049)
        Environmental Law Clinic
        Ricketson Law Building
        University of Denver Sturm College of Law
        2255 E. Evans Avenue, Suite 335
        Denver, CO 80208
        Phone: (303) 871-6140
        Fax: (303) 871-6847
        elc@law.du.edu

        Attorney for Defendant-Intervenor
        Friends of Animals

## CERTIFICATE OF SERVICE

I certify that on April 19, 2013, I electronically filed the foregoing **FRIENDS OF ANIMALS' RESPONSE TO PLANTIFFS EXOTIC WILDLIFE ASSOCIATION'S SUPPLEMENTAL BRIEF RE: COURT ORDER DATED MARCH 22, 2013 (PRUDENTIAL STANDING)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

Meredith Flax, meredith.flax@usdoj.gov
Counsel for the Fish and Wildlife Service

and

Anna M. Seidman, Director of Litigation for Safari Club International, (202) 543-8733, aseidman@safariclub.org.


Dated this 19th day of April, 2013.


                                                  Respectfully submitted,


                                                  /s/  Michael Harris

                                                  Michael Ray Harris
                                                  DC Bar No. CO0049
                                                  Environmental Law Clinic
                                                  Ricketson Law Building
                                                  University of Denver Sturm College of Law
                                                  2255 E. Evans Avenue, Suite 335
                                                  Denver, CO 80208
                                                  Phone:  (303) 871-6140
                                                  Fax: (303) 871-6847
                                                  elc@law.du.edu

                                                  Attorney for Defendant-Intervenor
                                                  Friends of Animals